COMMONWEALTH of Pennsylvania, Appellee

v.

Deiyo DIXON, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 23, 2008.

Filed June 15, 2010.

---

Marissa Bluestine, Public Defender, Philadelphia, for appellant.

Suzan Willcox, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

BEFORE: STEVENS, MUSMANNO, KLEIN *, BENDER, BOWES, GANTMAN, SHOGAN, FREEDBERG and CLELAND, JJ.

* Judge Klein did not participate in the consid-

OPINION BY STEVENS, J.:

¶ 1 Deiyo Dixon appeals from the judgment of sentence imposed by the Court of Common Pleas of Philadelphia County. We have granted *en banc* review to address suppression and sentencing issues raised by Dixon. Following careful examination of the record before us, as well as pertinent case and statutory law, we find no error on the part of the lower court, and affirm the judgment of sentence.

¶ 2 The underlying facts of this case are not in dispute. Firearms charges were leveled against Dixon following events which occurred on December 4, 2005. The Affidavit of Probable Cause issued for Dixon's arrest describes those events as follows:

> While in plain clothes assignment as 23bd2 the officers were patrolling the area, 1200 North 29th St., on 12–04–05 12:25 pm; when they observed a possible drug transaction between the offender and another male, Arthur Kett. The officers exited their vehicle to approach the males, P/O Nelson observed Kett holding in plain view a small zip-loc pkt of possible marijuana, P/O Parker then went to the other male to stop him for investigation, he immediately adopted a hostile attitude ignored the officer's request to stop; a struggle ensued during which time a small blk and silver semi auto pistol fell from the defendant waist area. The offender fled and after a short foot pursuit was lost in the area of 2815 Stile St.
>
> The officers then came to Central Detectives, with the revolver weapon, identified as a .40 Cal Taurus Millennium with a total of ten rounds ser # svc–59203. Record check of this weapon revealed it stolen on 06–20–2004, under OCA 04–25–58539 from the residence of Juan

eration or decision of this case.

Jose Pitre. Additionally the officer identified the other offender as Deiyo Dixon of 2815 Stile St, whose [sic] had a prior arrest history under PPN 932769. Further the assigned conducted a court history of the offender which revealed that he is currently under Probation for Narcotics violations, under DC 04–23–045231, Through 05–16–2007W

Affidavit of Probable Cause signed 12/6/05.

¶ 3 Dixon was arrested on December 6, 2005. He filed an omnibus pretrial motion seeking suppression of evidence on several grounds. Following an October 4, 2006 hearing, the learned Honorable Leon Tucker denied the suppression motion, concluding that under the totality of the circumstances, Dixon's arrest was with probable cause. N.T. 10/4/06 at 23–28.

¶ 4 A waiver trial was conducted, and Dixon was found guilty of possessing a firearm in violation of 18 Pa.C.S.A. § 6105,[1] carrying a firearm without a license in violation of 18 Pa.C.S.A. § 6106,[2] and carrying a firearm on a public street in Philadelphia in violation of 18 Pa.C.S.A. § 6108.[3]. On February 1, 2007, he was sentenced to two and a half years to 5 years imprisonment for violation of Section 6105, and a consecutive four years probation for violation of Section 6106. N.T. 2/1/07 at 12. No further penalty was imposed for his violation of Section 6108. *Id.*

¶ 5 On February 28, 2007, Dixon appealed the judgment of sentence, and was ordered to file a Rule 1925(b) statement of matters complained of on appeal.[4] In an

---

1. Section 6105, pertaining to "Persons not to possess, use, manufacture, control, sell or transfer firearms," states:
   (a) OFFENSE DEFINED.—
   (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.
   (2)(i) A person who is prohibited from possessing, using, controlling, selling, transferring or manufacturing a firearm under paragraph (1) or subsection (b) or (c) shall have a reasonable period of time, not to exceed 60 days from the date of the imposition of the disability under this subsection, in which to sell or transfer that person's firearms to another eligible person who is not a member of the prohibited person's household.
   18 Pa.C.S. § 6105.

2. Section 6106, pertaining to "Firearms not to be carried without a license," directs:
   (a) OFFENSE DEFINED.—
   (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of busi-

ness, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
   (2) A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.
   18 Pa.C.S. § 6106.

3. Section 6108, pertaining to "Carrying firearms on public streets or public property in Philadelphia," states:

   No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
   (1) such person is licensed to carry a firearm; or
   (2) such person is exempt from licensing under section 6106 of this title (relating to firearms not to be carried without a license).
   18 Pa.C.S. § 6108.

4. Dixon's timely Rule 1925(b) statement asserted several allegations of error regarding the denial of Dixon's suppression request, including claims that (1) the Commonwealth

unpublished memorandum, the three judge panel of this Court originally assigned to hear Dixon's appeal determined that the Commonwealth had failed to sustain its burden of proof at the suppression hearing, and, therefore, Judge Tucker erred in refusing to grant Dixon's suppression request. *Commonwealth v. Dixon*, No. 574 EDA 2007, unpublished memorandum at 1–2 (Pa.Super. filed March 13, 2008). Dixon's judgment of sentence was vacated and the matter was remanded for a new trial. *Id.*[5]

¶ 6 Before that occurred, however, the Commonwealth filed a timely application for panel reconsideration or *en banc* reargument, and *en banc* reargument was granted on May 22, 2008, without limitation as to the issues to be addressed.[6] Dixon now asks us to determine:

1. Whether, where the Commonwealth fails to put forth any evidence to meet its burden of proof on a properly presented motion to suppress physical evidence, the trial court erred in denying the motion?

2. Whether, even given the Commonwealth's misinterpretation of the presented ground for the motion to suppress evidence, reasonable suspicion was lacking where there was no exchange of

anything and where there were no facts presented to establish a belief that appellant was armed and dangerous?

3. Did not the trial court err in sentencing Appellant to two consecutive sentences for a single criminal act in violation of his right not "to be twice put in jeopardy of life or limb?

Appellant's brief at 3.

¶ 7 Dixon's first two allegations pertain to the denial of his suppression motion.

"Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. ... [W]e must consider only the evidence of the prosecution and so much of the evidence of the defense as remains uncontradicted when read in the context of the record as a whole." *Commonwealth v. Eichinger*, 591 Pa. 1, 915 A.2d 1122, 1134 (Pa.2007), cert. denied, 552 U.S. 894, 128 S.Ct. 211, 169 L.Ed.2d 158 (2007). Those properly supported facts are binding upon us and we "may reverse only if the legal conclusions drawn therefrom are in error." *Id.*

had failed to meet the burden imposed on it by Pa.R.Crim.P. 581(H); (2) the Commonwealth had failed to demonstrate that the police had reasonable suspicion that criminal activity was afoot in order to justify Dixon's seizure, or that he was armed and dangerous in order to justify a frisk; (3) the police lacked probable cause to arrest and search Dixon; and (4) Judge Tucker erred in factually finding that Dixon was arrested on December 4th. Pa.R.A.P. 1925(b) Statement of Matters Complained of on Appeal at 1–5. In addition Dixon's 1925(b) statement also challenged the sentences imposed upon him. *Id.* at 7, 8, 9.

5. Since it vacated Dixon's sentence, the three judge panel did not address his challenges to that sentence.

6. Pursuant to the Pennsylvania Rules of Appellate Procedure, "[r]eargument may be allowed limited to one or more of the issue presented in the application, in which case the order allowing the reargument shall specify the issue or issues which will be considered by the court." Pa.R.A.P. 2546(b). Such was not the case here. Order filed 5/22/08. If *en banc* consideration is granted without limitation, "we review all issues as if the parties were presenting them to this Court for the first time." *Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 622 A.2d 298, 300 n. 1. (1993).

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa.2009). *See also Commonwealth v. Hernandez*, 594 Pa. 319, 328, 935 A.2d 1275, 1280 (2007). "Moreover, even if the suppression court did err in its legal conclusions, the reviewing court may nevertheless affirm its decision where there are other legitimate grounds for admissibility of the challenged evidence." *Commonwealth v. Wilson*, 927 A.2d 279, 284 (Pa.Super.2007) (citing *Commonwealth v. Andersen*, 753 A.2d 1289, 1291 (Pa.Super.2000)). *See also Commonwealth v. Laatsch*, 541 Pa. 169, 172, 661 A.2d 1365, 1367 (1995).

¶ 8 In the matter at hand, Judge Tucker entered his findings of fact on the record at the conclusion of the suppression hearing, in compliance with Pa.R.Crim.P. 581(I). N.T. 10/4/06 at 23–24. A review of those findings shows that they are supported by the record with the minor exception that Dixon was arrested on December 6th, not December 4th. As such, we turn to an assessment of the legal conclusions Judge Tucker has drawn from those facts, first addressing the propriety of his determination that, contrary to Dixon's assertion, the Commonwealth did not run afoul of Rule 581(H).[7]

¶ 9 Rule 581 as a whole "addresses the right of a criminal defendant to move to suppress evidence alleged to have been obtained in violation of his or her rights, and sets forth the procedure attendant to the disposition of a suppression motion." *Commonwealth v. Baumhammers*, 599 Pa. 1, 960 A.2d 59, 76 (2008).[8] The Rule imposes burdens on both the defendant and the Commonwealth.

---

7. We note that this allegation has been preserved for purposes of appeal because it was raised before the trial court, and was included in Dixon's Rule 1925(b) statement. Pursuant to the Pennsylvania Rules of Appellate Procedure, issues not raised in the lower court are waived and cannot be raised for the first time on appeal. Pa.R.A.P. 302(a). In the case at hand, when the Commonwealth rested at the suppression hearing, Dixon's counsel clearly alerted Judge Tucker that he believed the Commonwealth had failed to meet its burden of proof because it had not introduced evidence of "what was actually found as a result of the search and the circumstances of the search." N.T. 10/4/06 at 13. Thus Dixon raised before the lower court a claim that the Commonwealth failed to meet its burden of proof by failing to introduce evidence of the item that was found as a result of the search, and the circumstances of the search, and such a claim has been preserved for appeal in so far as the requirements of Rule 302(a) are concerned.

In addition to preservation under Rule 302(a), *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998), and its progeny require that issues must be presented in a timely filed Rule 1925(b) statement, if such a statement is properly demanded of the appellant. Here, as we noted above, Dixon filed such a statement, asserting in pertinent part that Judge Tucker erred in denying the motion to suppress "where there was no evidence presented to establish how the handgun was recovered." Motion filed 5/7/07 at 1. Without presenting such evidence, Dixon's statement claimed, the Commonwealth failed to fulfill the burden placed on it by Pa. R.Crim.P. 581(H) to prove that the evidence was obtained in a way that did not violate Dixon's constitutional rights. *Id.* at 2.

Based on the above, we find that Dixon has properly preserved for appellate review an allegation that Judge Tucker erred in refusing to grant suppression based on Dixon's allegation that the Commonwealth failed to present evidence of the actual item seized from Dixon, and the manner in which that seizure occurred, and, as such, did not meet the burden placed on it by Rule 581(H).

8. Originally numbered 323, the Rule was enacted in 1965 and renumbered 581 in 2000. It states:

The Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the defendant's rights. The defendant may testify at such hearing, and if the defendant does testify, the defendant does not thereby waive the right to remain silent during trial. Pa.R.Crim.P. 581(H).

¶ 10 In refusing to suppress the evidence here, Judge Tucker correctly referenced the burdens placed on the parties by Rule 581. Rule 1925(a) Opinion at 3–4. He then addressed how the particular procedural circumstances before him affected the application of Rule 581, and concluded that because Dixon failed to comply with Rule 581(D), the burden imposed on the Commonwealth by Rule 581(H) never shifted, and suppression was thus denied. *Id.* at 4–5, 960 A.2d 59.

¶ 11 After careful consideration of the procedural history of this case, and the applicable case and statutory law, we find Judge Tucker's refusal to suppress the evidence proper, albeit on slightly different grounds.[9] Specifically, we do not find that Dixon wholly failed to comply with Rule 581(D), such that the Commonwealth was entirely relieved of the burden placed on it by Rule 581(H). Instead, we find that that Dixon's partial failure to comply with Rule 581(D) resulted in the imposition of a lesser burden on the Commonwealth. Further, we find that the Commonwealth has met that burden.

¶ 12 As Judge Tucker recognized, Rule 581(D) requires that a motion seeking suppression "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D); *Commonwealth v. McDonald*, 881 A.2d 858, 860 (Pa.Super.2005) (emphasis added).

¶ 13 We agree with Judge Tucker that Dixon's motion did not comply with the requirements of Rule 581(D).[10] Initially, it did not state "specifically and with particularity" the evidence sought to be suppressed, but instead merely indicated that Dixon sought the suppression of "physical evidence." Motion filed 4/19/06. It does not appear to be disputed that the gun taken as evidence on December 4th was the only piece of "physical evidence" seized pertaining to the charges leveled against Dixon, however.

¶ 14 Dixon's motion also failed to state with specificity and particularity the "facts and events" in support of his suppression request. Indeed, as a review of the motion quickly reveals, it sets forth no facts or events, even in the most basic form. Although Dixon's interactions with the police occurred on two dates—December 4th and December 6th, the motion did not state if it pertained to one or both dates. As we noted above, however, since the only evidence which could be the subject of a motion to suppress was taken on December 4th, the motion can only pertain to the events of that date.

¶ 15 Finally, and of greatest significance, is the manner in which the motion set forth the grounds for suppression. Dixon's motion asserted that suppression was necessary because (1) Dixon's "arrest was illegal" because he was "(a) arrested without probable cause, (b) he was subject to a

---

9. We may affirm the trial court's decision on any ground. *Commonwealth v. Winkle*, 880 A.2d 1280, 1285–1286 (Pa.Super.2005) (*citing Commonwealth v. Voss*, 838 A.2d 795 (Pa.Super.2003)).

10. Dixon sought suppression via a "form" motion, which is filled out by marking whatever sections the filer deems applicable. Dixon selected the section which asserted that suppression of the physical evidence was necessary because the "arrest was illegal" for three enumerated reasons. Motion filed 4/19/06 at (I)(A)(1), (B)(1)(a)-(c). In addition, separate from the allegations concerning the legality of Dixon's arrest, another selected option asserted that the physical evidence should be suppressed because "the search was without a warrant" and "the search was conducted without probable cause." *Id.* at (B)(3), (B)(4). The motion did not set forth any specific date references, nor did it specify the "physical evidence" to be suppressed.

stop and frisk on less than reasonable suspicion, and (c) he was arrested without a lawfully issued warrant or other legal justification;" and (2) "the search was conducted without probable cause." Motion filed 4/19/06.[11] Thus the specific and particular "grounds for suppression" set forth in compliance with Rule 581(D) were that suppression of the physical evidence was necessary based on lack of reasonable suspicion and/or probable cause as those requirements pertained to the "stop," "frisk," "search" and "arrest." The motion did not assert as a ground for suppression that the manner of the seizure of the physical evidence violated Dixon's constitutional rights, only that the seizure was not warranted in the first place.[12]

¶ 16 Based on the contents of Dixon's motion, we find that he wholly failed to comply with the requirement imposed on him by Rule 581(D) to state specifically and with particularity the evidence to be suppressed and the facts and events in support of the suppression request. With regard to the requirement that the motion state specifically and with particularity the grounds for suppression, we find that Dixon's motion complied with that directive to the extent that it put the Commonwealth on notice that Dixon's claim hinged on the alleged lack of probable cause or reasonable suspicion to stop and search Dixon on December 4th. Thus Dixon partially complied with the requirements imposed on him by Rule 581(D).

¶ 17 We are thus left to determine the effect of this partial compliance on the Commonwealth's burden under Rule 581(H). Rule 581(H) pertains to the Commonwealth's response to a suppression request. It states, in pertinent part, that "[t]he Commonwealth shall have the burden of going forward with the evidence and of establishing that the challenged evidence was not obtained in violation of the

11. The motion also asserted that "the search was without a warrant," but that allegation does not pertain to our current discussion.

12. Dixon was given the opportunity to clarify the basis for his suppression request at the start of the suppression hearing, and his counsel confirmed that the grounds asserted were the alleged lack of reasonable suspicion or probable cause to stop and search Dixon in the first place, not the *manner* in which the stop and search were conducted or the *manner* in which the evidence was recovered. N.T. 10/4/06 at 4.

In direct response to Dixon's counsel's explanation of the basis for the suppression request, the prosecutor offered the testimony of Officer Nelson, regarding the observations which led to the decision to stop Dixon and Kett, then rested its case. At that point, despite his earlier indication that Dixon's suppression request was based on the allegation that the police lacked grounds to conduct a stop and search, Dixon's counsel abruptly asserted that the Commonwealth had rested prematurely, before introducing evidence of "what was actually found as a result of the search and the circumstances of the search," and, that as a result of such omission, the Commonwealth failed to meet its burden of proof. *Id.* at 13.

The prosecutor disputed this, indicating that her understanding of the basis of the suppression request was that there was no reasonable suspicion or probable cause to stop Dixon. *Id.* at 14. She asked that the Judge deny the suppression request "based upon the probable cause that [the officers] had to arrest this defendant." *Id.* Judge Tucker confirmed that this was also his understanding of the motion, and Dixon's counsel agreed that the ground for the suppression request was lack of reasonable suspicion or probable cause to stop Dixon. *Id.* at 15. Counsel then added, however, "what I'll now do is base the argument on two grounds," and repeated his claim that the Commonwealth had rested prematurely, resulting in the failure to meet its burden of proof. *Id.* at 15–16 (emphasis added).

Following further discussion with counsel, however, Judge Tucker clarified that Dixon's motion was limited to the events that took place on December 4th, and Dixon's counsel did not dispute this. *Id.* at 21–22.

defendant's rights." Pa.R.Crim.P. 581(H); *Commonwealth v. Iacavazzi*, 297 Pa.Super. 200, 443 A.2d 795 (1981). As Judge Tucker explained, however, the Commonwealth's burden under Rule 581(H) is not automatically triggered by the mere filing of a suppression motion. The requirements of 581(H) are affected by, and dependent on, compliance with Rule 581(D). *McDonald*, 881 A.2d at 860; *Commonwealth v. Bradshaw*, 324 Pa.Super. 249, 471 A.2d 558, 560 (1984); *Commonwealth v. Ryan*, 296 Pa.Super. 222, 442 A.2d 739, 744 n. 6 (1982); *Iacavazzi*, 443 A.2d at 797–798; *Commonwealth v. Marini*, 251 Pa.Super. 201, 380 A.2d 448, 450–451 (1977).

¶ 18 In the extreme case, a complete failure to comply with the specificity requirements of Rule 581(D) will result in waiver, as those requirements have been held to be mandatory. *Commonwealth v. Irving*, 485 Pa. 596, 601, 403 A.2d 549, 551 (1979) (*citing Commonwealth v. Baylis*, 477 Pa. 472, 384 A.2d 1185 (1978)); *Commonwealth v. Harper*, 485 Pa. 572, 581 n. 12, n. 13, 403 A.2d 536, 541 n. 12, n. 13 (1979).

¶ 19 As we noted above, however, we do not have before us an instance of complete noncompliance with Rule 581(D)'s requirements. Dixon's suppression request did state specifically and with particularity the grounds for suppression, *i.e.*, lack of probable cause and/or reasonable suspicion. A review of the suppression hearing transcript clearly shows that the Commonwealth presented testimony addressing this issue. Once the Commonwealth presented evidence supporting its position

that the police had probable cause and/or reasonable suspicion to stop Dixon, we disagree that it was additionally required to present evidence detailing the actual manner of the stop and specific way in which the gun was recovered. As the Superior Court noted in *Bradshaw*:

> To require the Commonwealth to prove the legality of all its investigatory techniques, in a situation where no specific or particular course of conduct is clearly challenged, is not within the contemplation of 323(h) [now 581(H)]. Under these circumstances we may assume that the Commonwealth obtained the evidence in a legal manner, without requiring proof of legal procedures.

*Bradshaw*, 471 A.2d at 560. Here, Dixon's suppression request did not challenge the manner in which the stop was conducted, only that there were no grounds to conduct it in the first place.[13]

¶ 20 We find that, in light of Dixon's partial compliance with Rule 581(D), the suppression testimony presented by the Commonwealth in support of its position that probable cause and/or reasonable suspicion existed was sufficient to satisfy the burden placed on it by Rule 581(H). In sum, the Commonwealth addressed the grounds for suppression which Dixon's motion set forth specifically and with particularity. As such, we find no merit to Dixon's argument that suppression was required based on the Commonwealth's failure to meet its burden of proof under Rule 581(H).

¶ 21 In addition to challenging Judge Tucker's suppression order on the grounds that the Commonwealth had

---

13. As Judge Tucker explained:

The only violations of Dixon's rights that were communicated to this Court involved the stop, seizure, and search of his person. Dixon did not specifically aver that there was an unlawful seizure of physical evidence. As a result, this court focused on whether the stop, seizure and search of Dixon were lawful, which were the limited grounds he relied on to suppress the evidence.

Rule 1925(a) Opinion at 5.

failed to meet its burden under Rule 581(H), Dixon also asks us to determine whether suppression was warranted when "reasonable suspicion was lacking where there was not exchange of anything and where there were no facts presented to establish a belief that appellant was armed and dangerous." Appellant's brief at 3. Despite Dixon's emphasis on reasonable suspicion, Judge Tucker's decision to deny Dixon's suppression request was clearly based on the existence of probable cause.[14] N.T. 10/4/06 at 26. Charged as we are with determining the propriety of the rulings presented to us on appeal, we turn to an examination of Judge Tucker's conclusion that probable cause supported Dixon's arrest. Looking first to the judge's factual findings, we conclude that they are supported by the record.[15] We thus turn to the legal conclusion drawn therefrom that Dixon's arrest was supported by probable cause.

¶ 22 Judge Tucker based this determination on multiple factors. The judge first emphasized that Officer Nelson, having conducted more than 300 narcotics arrests during his 12 years on the force, had "vast experience" with narcotics arrests "in that

---

**14.** The existence of reasonable suspicion supports an "investigative detention," or *Terry* stop (deriving its name from *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)) which subjects a person to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. *Commonwealth v. Chase*, 599 Pa. 80, 960 A.2d 108, 117 (2008) (*citing Commonwealth v. Polo*, 563 Pa. 218, 759 A.2d 372, 375 (Pa.2000)). If an arrest or custodial detention occurs, however, it must be supported by probable cause, not just reasonable suspicion. *Commonwealth v. Jones*, 874 A.2d 108, 116 (Pa.Super.2005) (*citing Commonwealth v. DeHart*, 745 A.2d 633, 636 (Pa.Super.2000)).

Probable cause is made out when "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Rodriguez*, 526 Pa. 268, 585 A.2d 988, 990 (Pa.1991). The question we ask is not whether the officer's belief was "correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Rather, we require *only a "probability*, and not a prima facie showing, of criminal activity." *Illinois v. Gates*, 462 U.S. 213, 235, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (citation omitted) (emphasis supplied). In determining whether probable cause exists, we apply a totality of the circumstances test. *Commonwealth v. Clark*, 558 Pa. 157, 735 A.2d

1248, 1252 (Pa.1999) (relying on *Gates, supra*).

*Thompson*, 985 A.2d at 931.

**15.** Specifically, Judge Tucker made the following findings of fact at the conclusion of the suppression hearing:

[A]t approximately 12:25 p.m., in the vicinity of the 1200 block of North 29th Street in the city and county of Philadelphia, Officer Nelson, along with his partner, Officer Parker, were in plain clothes operating an unmarked vehicle in that vicinity. Offer Nelson, prior to that date, had approximately 12 years on the police force, had been involved in approximately 300 narcotics arrests, and many of those arrests, approximately 40 were in that immediate vicinity. It was at that time when the officers were operating the unmarked vehicle, they observed Mr. Dixon, along with an individual, Arthur Kett, in the middle of the block. It was at that time that ... Officer Nelson observed what he believed to be a narcotics transaction, based upon his years of experience on the police force and his various arrests regarding narcotics, and his experience in that particular area, known to him as a high drug area for the sale of crack cocaine and marijuana. It was at that time when he observed the two males doing, again, what he believed to be a narcotics transaction, and that belief was based upon what he observed, a hand-to-hand transaction, closed fist to closed fist transaction, after looking up and down the street by the individuals.

N.T. 10/4/06 at 23–24.

particular area," including 40 arrests in that immediate vicinity. *Id.* In addition, Judge Tucker noted Officer Nelson personally observed Kett checking up and down the block before he and Dixon engaged in the hand to hand gesture in question. *Id.* Finally, Judge Tucker called attention to the fact that the neighborhood where the arrest occurred was a known high drug crime location. *Id.* at 27 (*citing Commonwealth v. Dunlap*, 846 A.2d 674 (Pa.Super.2004) (*en banc*); *Commonwealth v. Nobalez*, 805 A.2d 598 (Pa.Super.2002), *appeal denied*, 575 Pa. 692, 835 A.2d 709 (2003); *distinguishing Commonwealth v. Banks*, 540 Pa. 453, 658 A.2d 752 (1995)).[16] Accordingly, concluded Judge Tucker, the totality of the circumstances gave the officers probable cause to stop and arrest Dixon, and to search him incident to that arrest.

¶ 23 In the several years that have passed since Judge Tucker made his October 2006 suppression ruling in this matter, the cases to which he cites have been the subject of hot debate. The Superior Court's *en banc* decision in *Dunlap*, upon which Judge Tucker relied, was subsequently reversed by the Pennsylvania Supreme Court on December 28, 2007. *Commonwealth v. Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007). Therein, the Supreme Court held that "police training and experience, *without more*, is not a fact to be added to the quantum of evidence to determine if probable cause exists, but rather a 'lens' through which courts view the quantum of evidence observed at the scene." *Dunlap*, 596 Pa. at 153–154, 941 A.2d at 675 (emphasis in original).

¶ 24 The implications of a police officer's experience when making a probable cause determination were addressed yet again in late 2009, when the Pennsylvania Supreme Court heard *Thompson, supra.* That case involved a 2005 arrest by a police officer

---

**16.** In *Banks*, a Philadelphia Police officer observed the appellant and another person exchange an unknown object for money on a Philadelphia street corner. *Banks*, 540 Pa. at 454, 658 A.2d at 752. As the officer's marked patrol car drew near, the appellant fled, but he was promptly captured and searched, revealing cocaine in his possession. *Id.* Addressing whether the arrest was with probable cause, the Pennsylvania Supreme Court found that:

> mere police observation of an exchange of an unidentified item or items on a public street corner for cash (which alone does not establish probable cause to arrest) cannot be added to, or melded with the fact of flight (which alone does not establish probable cause to arrest) to constitute probable cause to arrest. Such facts, even when considered together, fall narrowly short of establishing probable cause.

*Id.*, 540 Pa. at 456, 658 A.2d at 753.

Subsequent to the Supreme Court's *Banks* decision, an *en banc* panel of the Superior Court heard *Dunlap*, wherein a Philadelphia police officer with five years experience, including nine months as a member of the drug strike force, who had conducted fifteen to twenty narcotics arrests in the known high drug crime neighborhood in question, observed the appellant approach a man standing on a street corner, engage in a brief conversation, and then exchange money for small objects. *Dunlap*, 846 A.2d at 675. The appellant was stopped by another police officer who recovered from him three packets of crack cocaine. *Id.*, 846 A.2d at 675–676. The observing officer testified that the appellant was stopped because, based on the officer's experience and knowledge, he believed that what he had witnessed was a narcotics transaction. *Id.*, 846 A.2d at 676. Finding that probable cause was established by these circumstances, the *en banc* panel of the Superior Court distinguished *Banks, supra*, listing as "key differences" that (a) an experienced narcotics officer made the observations; (b) the transaction took place in what the officer knew from personal and professional experience, as well as reputation, to be a high drug-crime area; and (c) based on his training, experience as an officer, and knowledge of the area, the officer reasonably concluded that he probably witnessed a drug transaction. *Dunlap*, 846 A.2d at 675.

with nine years' experience, patrolling in a high crime area, who saw the appellant hand money to another individual in exchange for a small object. *Id.*, 985 A.2d at 930. Based on his prior experience with drug arrests involving this very activity, the officer believed that a drug transaction had occurred, stopped the appellant, and recovered heroin from his pocket. *Id.* The appellant filed a suppression motion, which was denied prior to trial, then appealed to the Superior Court following his eventual conviction. Based on its March 2004 holding in *Dunlap*, 846 A.2d 674, the Superior Court affirmed the denial of the appellant's suppression motion in June of 2007. *Commonwealth v. Thompson*, 931 A.2d 54 (Pa.Super.2007). Before *Thompson* was heard by the Supreme Court, however, that Court reversed the Superior Court's decision in *Dunlap*. *Dunlap*, 596 Pa. 147, 941 A.2d 671 (2007).

¶ 25 When the Supreme Court subsequently took up *Thompson*, it was to specifically determine "[w]hether the initial seizure and immediately ensuing search lacked probable cause and whether the lower courts applied erroneous standards to judge the constitutionality of police conduct." *Thompson*, 985 A.2d at 931. In so doing, the Court acknowledged the murky state of the law on the subject of police experience and probable cause.

> In attempting to discern the precise holding and proper significance of the *Dunlap* majority opinion, we observe that the expression purports to hold that police experience is *not a factor* relevant to probable cause, while at the same time directs that police experience is *relevant* to the probable cause inquiry. The *Dunlap* majority rejected the notion that police experience is worthy of the label "factor," but it conceded that such

experience informs the court's decision so much that it enables the court to find probable cause where it otherwise would be unable to do so. It is difficult to reconcile *Dunlap's* professed holding with its own explanation and rationale. Further, and perhaps more importantly, two of the justices in the *Dunlap* majority (as well as the three other justices who wrote their own expressions) were of the opinion that police experience and training indeed are proper factors to consider in determining probable cause.

> In light of the *Dunlap* majority's equivocal explanation of its holding, and given the manner in which the votes were cast in that case, it is not surprising that both parties claim *Dunlap* supports their positions on appeal. Our careful consideration of this issue, as well as the uncertainty of our jurisprudence in this area of the law, leads us to conclude that a clarification is warranted.

*Thompson*, 985 A.2d at 934–935 (footnote omitted, emphasis in original).

¶ 26 To that end, the Supreme Court held that "a police officer's experience may fairly be regarded as a relevant factor in determining probable cause," with the caution that " 'an officer's testimony in this regard shall not simply reference 'training and experience abstract from an explanation of their specific application to the circumstances at hand' ... [but] must demonstrate a nexus between his experience and the search, arrest, or seizure of evidence." *Id.* at 935.[17] Having so concluded, the Supreme Court turned to the specific circumstances before it.

¶ 27 As we noted above, the appellant in *Thompson* was arrested and searched by an experienced officer who had observed

---

**17.** In so concluding, *Thompson* expressly disapproved the Supreme Court's decision in

*Dunlap,* insofar as it holds otherwise. *Thompson*, 985 A.2d at 935 n. 8.

him exchange money for a small object in a high drug crime area. *Thompson*, 985 A.2d at 930. In finding that the search and seizure were supported by probable cause, the Supreme Court noted the officer's nine years experience, including his familiarity with the nature of the neighborhood and the type of hand-to-hand drug exchange in question. *Id.*, 985 A.2d at 936. The Court also noted that the officer drew a nexus between his experience and the observations he made leading to the appellant's arrest, testifying that he had seen that type of exchange done several hundred times, and performed that many arrests of "this very type." *Id.* at 936.

¶ 28 Thus, pursuant to *Thompson*, Officer Nelson's experience may be regarded as a relevant factor in determining probable cause, so long as there is a nexus between that experience and his decision to stop and search Dixon. *Id.* at 935. We find that such a nexus has been demonstrated. Officer's Nelson testified that his experience included twelve years on the police force, including over 300 narcotics arrests (40 to 50 of which occurred in the high crime neighborhood in question). N.T. 10/4/06 at 6–7, 9–10. Additionally, Officer Nelson explained that over 250 times he had personally observed drug dealers engaged in the closed fist to closed fist hand transaction that he observed Dixon and Kett perform. *Id.* at 9. Such testimony clearly demonstrates the type of nexus contemplated by *Thompson*.

¶ 29 Thus, for purposes of a probable cause analysis, the totality of the circumstances presented at Dixon's suppression hearing established that Officer Nelson,

with the benefit of extensive drug crime experience, observed suspicious behavior (the furtive glances up and down the street), followed by a hand to hand gesture the officer knew from experience was indicative of a drug transaction, in a known high crime neighborhood. We find that these facts and circumstances, which were within the knowledge of Officer Nelson at the time Dixon was stopped and a search was attempted, are sufficient to warrant a person of reasonable caution in the belief that Dixon had committed a crime. As such, probable cause existed, and suppression was properly denied. *Thompson*, 985 A.2d at 931, 935–936; *Commonwealth v. Wells*, 916 A.2d 1192, 1196 (Pa.Super.2006) (Identifying as factors relevant to a determination of probable cause the professional experience of a police officer in interpreting the actions of those who traffic in controlled substances, an officer's knowledge of drug-trafficking activity in a particular neighborhood, and the movements and manners of the parties to the transaction); *Nobalez*, 805 A.2d at 600 (citing the experience of a narcotics officer, which allowed him to interpret the way a drug trafficker was acting and to "know in a way a layperson could not that [the officer] was watching a drug sale.").[18]

¶ 30 In addition to raising claims regarding the suppression of evidence, Dixon also questions "[d]id not the trial court err in sentencing Appellant to two consecutive sentences for a single criminal act, in violation of his right not 'to be twice put in jeopardy of life or limb.'" Appellant's brief at 3.[19] Merger of sentences is

---

18. Once probable cause existed to arrest Dixon, a search incident to that arrest was permitted. *Commonwealth v. White*, 543 Pa. 45, 57, 669 A.2d 896, 902 (1995) (No warrant is required to search a person incident to a lawful arrest, and the scope of the search

encompasses the person and the immediate area in which the person was detained).

19. Although Dixon did not raise this allegation before the trial court, either at sentencing or in a post-sentence motion, a claim that crimes should have merged for purposes of

governed by Section 9765 of the Judicial Code, which directs that:

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "Despite the enactment of Section 9765, the doctrine of merger remained a thorny issue." *Commonwealth v. Baker*, 963 A.2d 495, 508 (Pa.Super.2008).

> In 2006, our Supreme Court attempted to clarify the law of merger in *Commonwealth v. Jones*, 590 Pa. 356, 912 A.2d 815 (Pa.2006). However, *Jones* was a plurality decision that generated two different approaches to a merger analysis: a "lead opinion" approach, authored by Justice Castille, and a "dissenting opinion" approach, authored by Justice Newman. The lead opinion approach requires an evaluation of the statutory elements of each crime with an eye to the specific facts of the case. The dissenting approach utilizes a stricter, statutory elements test. Neither approach garnered the support of more than half of the justices. Therefore, there is no *holding* in *Jones* upon which this Court can rely.

*Commonwealth v. Coppedge*, 984 A.2d 562, 564 (Pa.Super.2009). More than a year after *Jones* was decided, a panel of this Court was asked to address a merger claim in *Commonwealth v. Brandon Williams*, 920 A.2d 887, 888 (Pa.Super.2007), a case involving a crime which

occurred after the effective date of Section 9765. Citing *Jones* as the Pennsylvania Supreme Court's most recent pronouncement on the subject, *Williams* adopted the elements-based approach taken by Justice Newman's dissenting opinion, indicating that it "reflects and gives proper deference to § 9765, a statute that has not been ruled unconstitutional by our Supreme Court," and "more accurately reflects this Court's jurisprudence on merger." *Williams*, 920 A.2d at 891.

¶ 31 Since *Williams*, the Superior Court has employed an elements-based test to determine whether crimes merge for sentencing purposes. *Coppedge*, 984 A.2d at 564–565 (citing *Commonwealth v. Gary Williams*, 980 A.2d 667 (Pa.Super.2009)); *Baker, supra; Commonwealth v. Springer*, 961 A.2d 1262 (Pa.Super.2008); *Commonwealth v. Martz*, 926 A.2d 514 (Pa.Super.2007), (appeal denied, 596 Pa. 704, 940 A.2d 363 (Pa.2008)). *See also Commonwealth v. Pitner*, 928 A.2d 1104, 1111 (Pa.Super.2007) (appeal denied, 596 Pa. 716, 944 A.2d 757 (2008)). Then, on December 28, 2009, the Supreme Court decided *Commonwealth v. Baldwin*, 985 A.2d 830 (Pa.2009), expressly stating that:

> A plain language interpretation of Section 9765 reveals the General Assembly's intent to preclude the courts of this Commonwealth from merging sentences for two offenses that are based on a single criminal act unless all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Baldwin*, 985 A.2d at 837.

¶ 32 Thus, applying this standard to the matter at hand, we find that the charges

sentencing challenges the legality of a sentence and, thus, cannot be waived. *Commonwealth v. Ede*, 949 A.2d 926, 932 (Pa.Super.2008) [*vacated and remanded on other*

grounds, 600 Pa. 506, 968 A.2d 228 (2009)]. Therefore, we are not precluded from reviewing this issue on appeal.

against Dixon arose out of a single act, but not all the statutory elements of the Section 6105 violation coincide with those of the Section 6106 violation.

Section 6105(a) contains a statutory element that § 6106(a) does not: namely, conviction of an enumerated offense. Under § 6105, the Commonwealth need not prove that the defendant lacks a valid license. Rather, it must only prove that Appellant was convicted of an enumerated offense. Similarly, Section 6106(a) contains a statutory element that § 6105(a) does not: namely, lack of a valid license.

*Williams,* 920 A.2d at 891. As such, Dixon's sentences were not appropriate for merger, and no reversal is required on this ground. 42 Pa.C.S. § 9765.

¶ 33 For the foregoing reasons, we affirm Dixon's judgment of sentence.

¶ 34 Affirmed.

¶ 35 CLELAND, J. concurs in the result.

¶ 36 BENDER, J. notes his dissent.