J-A15045-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NATALIE BLACK | : | |
| | : | |
| Appellant | : | No. 792 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 12, 2021
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0003531-2020

BEFORE:  BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.:                **FILED: October 7, 2022**

Natalie Black ("Black") appeals from the judgment of sentence imposed following her conviction for possession of a controlled substance.[1]  We affirm.

Based on our disposition, we summarize the factual background of this appeal from the suppression record.  In the evening of September 4, 2019, the Pittsburgh Bureau of Police conducted surveillance of the Allegheny Dwellings housing complex ("the complex"), a high-crime area known for drug sales.  **See** N.T. Suppression Hearing, 3/11/21, at 23.  Detectives Ronald Doria and Joseph Bucci, along with Officer Baczynsky,[2] were on patrol.  Detective Reginald Eiland was in a separate area viewing live feeds from surveillance cameras at the complex.  **See id**. at 11, 16-17.

---

[1] **See** 35 P.S. § 780-113(a)(16).

[2] The record does not contain Officer Baczynsky's first name.

Detective Eiland alerted the patrol officers to the presence of a man, later identified as Jermaine Robinson ("Robinson"), and a woman, later identified as Black, walking toward a parking lot at the complex. *See id*. at 12. The patrol officers got out of their vehicle and approached the pair. When Robinson and Black saw the patrol officers approaching, they momentarily walked behind a parked vehicle. *See id*. at 24. From the camera angle he was watching, Detective Eiland saw Black make a throwing or tossing motion while she was behind the vehicle, but he was not able see the item thrown.[3] *See id*. at 14.

The patrol officers asked whether Robinson and Black lived in the area or at the complex. When they responded that they did not, the officers "detained" them. *See id*. at 24 (indicating Detective Bucci's testimony that the officers detained Robinson and Black and noting that there were "no trespassing signs" posted in the area). As the other officers questioned Black, Detective Bucci walked around the car and saw two "stamp bags" on the ground. *See id*. Thereafter, Detective Bucci placed Black under arrest, searched Black's purse incident to arrest, and he discovered additional drugs. *See id*. at 28.

At some point during the interaction between Robinson, Black, and the patrol officers, Detective Eiland rewound and reviewed recordings from other

---

[3] Detective Bucci, who was approaching Robinson and Black on foot, did not see Black make a throwing motion when she was behind the vehicle. *See id*. at 27. The record does not indicate whether any of the other patrol officers saw the throwing motion.

surveillance cameras, and he observed "white objects on the ground that were not there prior to [Black] making the throwing motion." *See id*. at 16. Detective Eiland called Detective Doria and informed him of his observations from the surveillance cameras.[4] *See id*.

The patrol officers issued Black a summons and allowed her to leave the complex. Subsequent testing established that the drugs found in Black's purse were a mixture of heroin and fentanyl. The Commonwealth charged Black with possession of a controlled substance, tampering with physical evidence, and defiant trespass.[5]

Black filed a suppression motion claiming that the search of her purse was unlawful because officers lacked probable cause to arrest her and conduct a search incident to arrest. *See* Motion for Suppression, 9/29/20, at ¶¶ 13-15. The trial court held a suppression hearing at which Detectives Eiland and Bucci testified about the probable cause for Black's arrest and Detective Bucci's search of Black's purse incident to the arrest. *See* N.T. Suppression Hearing, 3/11/21, at 2, 4 (indicating that the Commonwealth was calling Detectives Eiland and Bucci in response to Black's challenge to whether probable cause existed). At the conclusion of the hearing, Black asserted that

_____

[4] It is unclear from the suppression record at what point Detective Eiland called Detective Doria during the patrol officers' interactions with Robinson and Black. The trial court appears to have found that Detective Eiland informed the patrol officers of his observations some time before Detective Bucci recovered the stamp bags from behind the car. *See* Trial Court Opinion, 8/16/21, at 6; N.T. Suppression Hearing, 3/11/21, at 36.

[5] *See* 18 Pa.C.S.A. §§ 4910, 3503.

Detective Bucci lacked probable cause at the time he "stopped" her because he had no knowledge of the "supposed throwing motion" and, therefore, "all of the stop, all of the seizure happened in advance of probable cause or any supposed probable cause the Commonwealth would put forward to try to justify it." *See id*. at 30. The trial court framed the issue as whether Detective Eiland conveyed the information before the "detention" such that "probable cause" would have existed and thereafter denied Black's suppression motion "[b]ased on the testimony of the officers." *See id*. at 36. Black filed a motion for reconsideration of the trial court's suppression ruling.

The trial court denied Black's motion for reconsideration after hearing the parties' arguments. Black immediately proceeded to a stipulated nonjury trial at which the court found her guilty of possession of a controlled substance.[6] That same day, the trial court sentenced her to six months of probation. Black timely appealed, and both she and the trial court complied with Pa.R.A.P. 1925.

Black raises the following issue for review:

Did the trial court err by denying Ms. Black's motion to suppress as the search here occurred before officers obtained reasonable suspicion that criminal activity was afoot?

Black's Brief at 5.

---

[6] The trial court found Black not guilty of tampering with physical evidence and defiant trespass.

As suggested by her statement of the question involved on appeal, Black's issue focuses on whether the officers had reasonable suspicion to stop her and conduct an investigative detention. Before addressing this issue, however, we initially consider whether she has preserved it for review. **See Commonwealth v. Smith**, 210 A.3d 1050, 1059 (Pa. Super. 2019) (holding that appellant Smith waived a suppression by failing to raise that claim at his suppression hearing or include it in his statement of matters complained of on appeal).

Pennsylvania Rule of Criminal Procedure 581 requires that a motion to suppress "state specifically and with particularity . . . the grounds for suppression[] and the facts and events in support thereof." Pa.R.Crim.P. 581(D). A defendant's motion to suppress identifies the issues on which the Commonwealth bears its burden of demonstrating that the challenged evidence was constitutionally obtained. **See Commonwealth v. Dixon**, 997 A.2d 368, 376 (Pa. Super. 2010); **see also** Pa.R.Crim.P. 581(H). This Court will not address new legal theories raised for the first time on appeal. **See Commonwealth v. Truong**, 36 A.3d 592, 598 (Pa. Super. 2012); **see also** Pa.R.A.P. 302(a).

Our review of the record establishes that Black's suppression motion claimed that the discovery of the drugs in her purse was unlawful because the police lacked probable cause to arrest her and conduct a search incident to arrest. **See** Motion for Suppression, 9/29/20, at ¶¶ 13-15. In response to Black's motion to suppress, the Commonwealth presented evidence

concerning her arrest and the search of her purse, **see** N.T. Suppression

Hearing, 3/11/21, at 2, and the trial court thereafter determined the search

of Black's purse fell within the search incident to arrest exception for a

warrantless search. **See** Trial Court Opinion, 8/16/21, at 6-7. At no time

during the litigation of her motion to suppress did Black state that she was

challenging the absence of reasonable suspicion, nor did she raise the issue

in her Rule 1925(b) statement.[7]

_____

[7] Black's Rule 1925(b) statement claimed, in relevant part, that the trial court:

   a. . . . erred in denying Ms. Black's Motion to Suppress. Ms. Black was arrested without the requisite probable cause to do so under both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. Specifically, the relevant officers' testimony failed to aver facts sufficient to establish probable cause for an arrest. All evidence recovered as a result of this unlawful arrest is therefore fruit of the poisonous tree and should have been suppressed.

   b. . . . erred in denying Ms. Black's Motion to Suppress, because the arresting officer searched her purse without a warrant, and no exception to the warrant requirement applied under the facts and circumstances at hand. The search of Ms. Black's purse therefore ran afoul of the protections provided by both the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution.

Black's Rule 1925(b) Statement, 7/7/21, at 2. Because her Rule 1925(b) statement only challenged her arrest without probable cause, we could separately find Black's issue on appeal waived for her failure to include it in her Rule 1925(b) statement. **See** Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the [1925(b)] Statement and/or not raised in accordance with the provisions of this paragraph (b)(4) are waived").

In her appellate brief, Black now asserts that she was detained without reasonable suspicion. *See* Black's Brief at 5. This is a new and distinct legal theory that she did not specifically preserve in her motion to suppress, argue at the suppression hearing, or include in her Rule 1925(b) statement.[8] While Black previously focused on her arrest and the search incident thereto, her arguments before this Court concern a different phase of her interaction with the officers.[9] Thus, because Black raised her claim that she was subject to an

_____

[8] *See generally Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (discussing the three categories of interactions between citizens and police, namely, (1) a mere encounter that does not require any level of suspicion or carry any official compulsion to stop or respond; (2) an investigative detention that permits the temporary detention of an individual if supported by reasonable suspicion; and (3) an arrest or custodial detention, which must be supported by probable cause).

[9] We acknowledge that the trial court's Rule 1925(a) opinion did not discuss waiver. Instead, the court noted that Black "seemingly argued" at the suppression hearing that the patrol officers detained her when they asked whether she lived at the complex. *See* Trial Court Opinion, 8/16/21, at 5. The court concluded that Black's interaction with the patrol officers was a mere encounter until Detective Bucci discovered the stamp packets on the ground. *See id*. at 5-6.

Our review of the suppression record reveals that the Commonwealth did not elicit testimony about the circumstances surrounding the patrol officer's initial questioning of Black or otherwise clarify Detective Bucci's testimony that he believed Black was detained after she and Robinson stated that they did not live at the complex. *See* N.T. Suppression Hearing, 3/11/21, at 24. However, because Black's suppression motion focused on her arrest and the search of her purse incident to arrest, it would be inappropriate to review the merits of Black's appellate issue challenging an investigative detention when she did not afford the Commonwealth the opportunity to develop a more complete record in the trial court. *See Commonwealth v. Freeman*, 128 A.3d 1231, 1242 (Pa. Super. 2015) (concluding that "when a
*(Footnote Continued Next Page)*

investigative detention without reasonable suspicion for the first time in her appeal, we conclude her appellate issue is waived.[10]

In sum, finding no preserved claims for review, we are constrained to affirm the judgment of sentence. *See Smith*, 210 A.3d at 1059.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/7/2022

---

defendant's motion to suppress does not assert specifically the grounds for suppression, he or she cannot later complain that the Commonwealth failed to address a particular theory never expressed in that motion).

[10] We acknowledge that Black filed a motion for reconsideration asserting that she was "detained" before the officers noticed the stamp bags on the ground. *See* Motion for Reconsideration, 3/13/21, at ¶ 15. However, her motion for reconsideration does not alter our conclusion that Black waived her issue on appeal. This Court has held that a motion for reconsideration does not cure a defendant's failure to state her grounds for relief before the trial court rules on her suppression motion. *See Commonwealth v. Prizzia*, 260 A.3d 263, 270-71 (Pa. Super. 2021). Additionally, Black framed her argument for reconsideration in terms of the absence of probable cause and did not mention a challenge to the lack of reasonable suspicion. *See* Motion for Reconsideration, 3/13/21, at 14 (asserting, "at the time that [Black] was stopped no probable cause existed to justify the stop").