J-A25011-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: COMMONWEALTH OF PENNSYLVANIA | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1572 EDA 2025 |

Appeal from the Order Entered May 30, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s):  CP-51-JV-0000965-2024

BEFORE:   LAZARUS, P.J., BOWES, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED DECEMBER 3, 2025**

The Commonwealth appeals from the order granting the suppression motion filed by S.M.  We reverse and remand for further proceedings consistent with this memorandum.

The juvenile court supplied the following factual background:

On June 26, 2024, at approximately 7:00 p.m., Officer Kevin Creely, a [twenty-two]-year veteran of the Philadelphia Police Department assigned to the 24th Police District, was conducting surveillance via [Real Time Crime Camera ("RTCC")[1]] at the 700 block of East Willard Street, an area known for its open-air [illegal] drug market.  Officer Creely observed S.M., wearing a white T-shirt and gray pants, interact with two individuals:  a white male later identified as Spencer Craven and another male in a gray shirt and white hat.  S.M. approached them, crossed to a black SUV,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] RTCC technology allows police to mount a camera in a designated area and watch from a remote location the audio and video captured by the camera, in real time.  The camera is not hidden.

and motioned for them to follow. Both individuals went behind the SUV with S.M., bent down out of the camera's view, and then dispersed, with Craven heading westbound on Willard Street.

Based on his experience, Officer Creely believed these actions were consistent with narcotics transactions. He stopped Craven, who admitted to possessing narcotics purchased from S.M., and officers recovered a zip-lock packet with a blue wax insert stamped "Pinocchio" containing a powdery substance, alleged to be heroin or fentanyl. . . .

Approximately five to ten minutes later, at 7:13 p.m., Officer Creely observed S.M. [through the RTCC] engage in a similar interaction with a female in a pink shirt. S.M. motioned her to the same black SUV, where they bent down out of view and then parted ways. Officer Creely, along with [two other officers], then stopped and arrested S.M. [One of the assisting officers] recovered six clear zip-lock packets with "Pinocchio" stamped wax inserts, identical to those found on Craven, and $75 in U.S. currency from S.M.'s right pants pocket.

Juvenile Court Opinion, 7/16/25, at 2-3 (citations omitted). The substance recovered from Craven and the juvenile was later tested and confirmed to be a mix of heroin and fentanyl.

As a result, the Commonwealth filed a petition alleging that S.M. committed delinquent acts which would constitute possession with intent to deliver and possession of a controlled substance if committed by an adult. At an adjudicatory hearing, S.M. orally moved to suppress all evidence obtained from his person, arguing that Officer Creely did not have reasonable suspicion or probable cause to stop and arrest him. A suppression hearing ensued, and the Commonwealth presented Officer Creely.

In addition to the facts outlined above, the officer attested that he has made "hundreds" of narcotics-related arrests on the high-crime block where

the juvenile was located. *See* N.T. Suppression, 5/30/25, at 7. He was familiar with the type of concealed exchange that S.M. had performed and recognized that crouching out of sight of the RTCC, remaining hidden behind a vehicle for a short period, and dispersing quickly, was indicative of drug transactions. *Id*. at 8-9. S.M. did not testify or present evidence. The court, finding that the officer did not have probable cause to arrest S.M., granted the motion and ordered the juvenile to be released with GPS and house restrictions, noting that he nevertheless had an unrelated delinquency petition pending.

The Commonwealth filed a motion for reconsideration, which the court denied with an accompanying opinion. The Commonwealth timely appealed from the suppression order, simultaneously filing its concise statement of errors in accordance with Pa.R.A.P. 1925(a)(2)(i), and a Pa.R.A.P. 311(d) certification, averring that the court's order granting the suppression motion substantially handicapped its case. Pursuant to Rule 1925(a), the court referred us to its opinion denying the motion for reconsideration. The Commonwealth raises the following question for our determination:

> Did the lower court err by concluding that officers lacked probable cause and ordering suppression where: a seasoned officer with decades of experience in investigating Philadelphia drug trafficking was conducting surveillance in an area known to be rife with drug sales; that officer observed S.M. motion two men behind a parked SUV, bend down out of view of a law enforcement surveillance camera, and shortly thereafter disperse; one of those men was stopped and quickly admitted to possessing narcotics; and, just minutes later, the officer watched S.M. repeat the same pattern with an unidentified woman?

Commonwealth's brief at 4.

We begin with an overview of the applicable legal principles:

> When the Commonwealth appeals from a suppression order, we follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.
>
> Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Floyd***, 313 A.3d 1061, 1064 (Pa.Super. 2024) (cleaned up).

This Court has explained that there are three types of warrantless interactions between citizens and police officers:

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

***Commonwealth v. Roberts***, 133 A.3d 759, 771 (Pa.Super. 2016) (cleaned up).

Since Officer Creely arrested S.M. without a warrant, we determine whether the officer had probable cause to do so.[2] In this vein, "we must consider the totality of the circumstances." *Commonwealth v. Hoyle*, 337 A.3d 544, 562 (Pa.Super. 2025) (cleaned up). Specifically, "[p]robable cause for a warrantless arrest exists when the facts and circumstances within the knowledge of the arresting officer are reasonably trustworthy and sufficient to justify a person of reasonable caution in believing that the arrestee has committed an offense." *Id*. This Court has further explained that "probable cause for a warrantless arrest requires only the probability, and not a *prima facie* showing, of criminal activity." *Floyd*, 313 A.3d at 1065. Notably, an "officer's training and experience are [factors] in determining probable cause but relevant to the issue only if there is a nexus between those skills and the search and seizure of the person and/or evidence." *Commonwealth v. Luczki*, 212 A.3d 530, 545 (Pa.Super. 2019) (citation omitted).

The juvenile court determined that Officer Creely arrested S.M. without probable cause because "the RTCC footage did not show S.M. exchanging any items with Craven." *See* Juvenile Court Opinion, 7/16/25, at 5. The court further stated that "the subsequent interaction with a female in a pink shirt involved the same obscured behavior—bending down behind the SUV—

---

[2] The Commonwealth concurs that the proper analysis is one of probable cause, not reasonable suspicion, because Officer Creely immediately arrested S.M. after observing the third suspected drug exchange. *See* Commonwealth's brief at 13 n.5.

without visible evidence of a transaction." *Id*. In sum, the court found that "the lack of direct observation of a narcotics exchange, coupled with the failure to identify a stash location[,] did not provide the specific facts necessary to establish probable cause." *Id*.

The Commonwealth argues that the court erred by disregarding Officer Creely's "professional experience, training, and familiarity with both narcotics trafficking and the nature of that particular neighborhood's open drug sales— all relevant factors in a probable cause analysis." Commonwealth's brief at 17. It declares that "the totality of the circumstances amply supported Officer [Creely]'s conclusion that drug sales were occurring." *Id*. at 16. In sum, the Commonwealth explains that "[t]o rule, as the lower court essentially did here, that an officer cannot conclude he is observing criminal activity unless he sees actual drugs and cash in fact would eviscerate the standard of probable cause, improperly elevating it to near certainty." *Id*. at 20 (emphasis omitted).

Pursuant to the above legal principles and the facts found by the juvenile court,[3] we agree with the Commonwealth that the court's legal conclusions are erroneous. This Court's analysis in *Commonwealth v. Dixon*, 997 A.2d 368 (Pa.Super. 2010), is apt. In that matter, Dixon was arrested after an officer believed he observed the appellant sell an illegal substance through a closed-hand exchange in a high crime area. The trial court denied Dixon's

_____

[3] The RTCC footage, which this Court has reviewed, supports the court's findings.

suppression motion, concluding that the officer had probable cause to arrest him. Although the officer did not see the drugs during the exchange, the trial court cited the officer's "vast experience with narcotics arrests in that particular area, including [forty] arrests in that immediate vicinity." *Id*. at 377 (cleaned up). Additionally, it noted that the officer had "personally observed drug dealers engaged in the closed fist to closed fist hand transaction that he observed Dixon and [his customer] perform." *Id*. at 380.

This Court affirmed. We explained that the officer's experience was a relevant factor based upon the nexus between his skill and the arrest, and summarized:

> [T]he totality of the circumstances presented at [the] suppression hearing established that [the officer], with the benefit of extensive drug crime experience, observed suspicious behavior (the furtive glances up and down the street), followed by a hand[-]to[-]hand gesture the officer knew from experience was indicative of a drug transaction, in a known high crime neighborhood. We find that these facts and circumstances, which were within the knowledge of [the officer] at the time Dixon was stopped and a search was attempted, are sufficient to warrant a person of reasonable caution in the belief that Dixon had committed a crime. As such, probable cause existed, and suppression was properly denied.

*Id*.

Like the officer in *Dixon*, Officer Creely attested to his substantial experience in law enforcement, particularly with the drug activity on the block in question. His knowledge demonstrated the requisite nexus between his aptitude and his decision to arrest S.M. *See Luczki*, 212 A.3d at 545. Particularly, the officer referenced his years of work on the drug-afflicted

block, high number of narcotic-related arrests, and familiarity with the common behaviors associated with illegal-substance transactions. *See* N.T. Suppression, 5/30/25, at 7-8. He recognized S.M.'s interactions with the first two individuals as indicative of drug sales and stopped Craven, who spontaneously confessed to obtaining illegal substances from the juvenile. *Id*. at 8-10. Shortly thereafter, Officer Creely observed S.M. on the RTCC engage in the same sequence of events with a third person. *Id*. at 11. At that point, Officer Creely possessed "reasonably trustworthy and sufficient" information to detain S.M. *See Hoyle*, 337 A.3d at 562.

By requiring Officer Creely to directly observe drugs being exchanged between S.M. and the three patrons before he could arrest the juvenile, the court erroneously applied a bar higher than probable cause. Conversely, the correct standard for probable cause is whether there was a "probability" of criminal activity based upon a totality of the circumstances. *See Floyd*, 313 A.3d at 1065. As explained, Officer Creely articulated facts and circumstances that would cause a person of reasonable caution to believe that S.M. had committed a delinquent act that would constitute a crime if perpetrated by an adult. Accordingly, we reverse the order granting the suppression motion and remand for further proceedings.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/3/2025