403 A.2d 549

COMMONWEALTH of Pennsylvania, Appellee,

v.

Donald IRVING, Appellant.

Supreme Court of Pennsylvania.

Argued April 17, 1979.

Decided July 5, 1979.

598

Lawrence S. Rosenwald, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Neil Kitrosser, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

EAGEN, Chief Justice.

Appellant, Donald Irving, was convicted of murder of the third degree, conspiracy and possessing instruments of crime in a nonjury trial in the Court of Common Pleas of Philadelphia. The charges against Irving arose from the shooting death of Hattie Jones inside her residence on February 13, 1975. In this appeal, Irving challenges the sufficiency of the evidence to sustain the finding of guilt of murder and the evidentiary use of an incriminating statement he gave to the police following his arrest.

Irving maintains his statement should have been suppressed since it was tainted by his illegal arrest made pursuant to a defective state warrant. The Commonwealth's evidence established the following facts pertinent to this claim: Donald Irving and Roy Holloway went to the residence of Hattie Jones on February 12, 1975 to purchase marijuana. They were met at the door and admitted by a roomer, Judson Washington. Washington also let Irving and Holloway out of the house on that date. The next day, February 13, 1976, the same two men returned to collect money Holloway claimed Hattie Jones owed him, and they were again admitted by Washington. They followed Washington up the stairs and entered the room of Hattie Jones. Washington returned to his own room next door. About a half hour later, Washington heard scuffling noises in Jones' room and heard one of the men say: "Where is it at?" Washington went to Jones' room to investigate. He was met at the door by Irving who held a pistol. Irving told Washington not to get involved and, while Irving held Washington at bay with his gun drawn, Irving and Washington retreated to Washington's room. More scuffling sounds came from Jones' room and were followed by two shots. Irving and Holloway ran from the house while Washington went to Jones' room and discovered she had been shot. Washington called the police. He was questioned at the scene and gave descriptions of the assailants. He later identified Irving as one of two perpetrators of the crime from an array of eleven photographs.

Based on this information, Detective Robert Kane sought a warrant for Irving's arrest. He presented an affidavit containing the following information:

"I accuse Donald Irving, 869 N. 26th Street, on or about Thursday, February 13, 1975, at approximately 4:40 P.M., in company with Roy L. Holloway, not in custody, did shoot and kill Hattie Jones, twenty-three, Negro female, inside residence, 3129 W. French Street."

An arrest warrant was issued based on this information alone. When Detective Kane learned Irving had fled the Commonwealth, he requested a federal fugitive warrant pursuant to 18 U.S.C. § 1073 and the assistance of the Federal Bureau of Investigation [F.B.I.].

Approximately nine months later, on November 24, 1975, Irving was arrested in New York City by New York Transit Authority police for an unrelated crime (jostling or pick-pocketing), and, in light of the outstanding fugitive warrant, he was transferred to the custody of F.B.I. agents to whom he gave an exculpatory statement. The Philadelphia police were contacted and, on December 5, 1975, Irving waived extradition and was returned to Philadelphia where he gave the incriminating statement involved in this appeal.

The suppression court ruled Irving's statement admissible after concluding that the challenged arrests were lawful notwithstanding a defective state warrant.[1] We find no error.

■ Irving's arrest on November 24, 1975 pursuant to a federal fugitive warrant was lawful. In *Commonwealth v. Joseph U. Lewis,* 484 Pa. 206, 398 A.2d 1016 (1979), we held such a warrant was valid despite an alleged defect in the state warrant on which it was based. Furthermore, eventual custody by Philadelphia police resulted from his voluntary waiver of extradition from federal custody in New York, see *United States v. Love,* 425 F.Supp. 1248 (D.C.N.Y.1977),

1. The Commonwealth concedes the arrest warrant was defective since the affidavit of complaint accusing Irving of complicity in the murder of Hattie Jones failed to include a recitation of probable cause.

rather than from an arrest pursuant to the Philadelphia warrant.

▮ Moreover, Irving's arrest by Philadelphia police was lawful despite the issuance of an invalid state arrest warrant since the arresting officers had sufficient information to have independent probable cause to justify a warrantless arrest. See *Commonwealth v. Whitson*, 461 Pa. 101, 334 A.2d 653 (1975); *United States v. Rose*, 541 F.2d 750, 756 (8th Cir. 1976); *United States v. Morris*, 477 F.2d 657, 663 (5th Cir. 1973), cert. denied 414 U.S. 852, 94 S.Ct. 146, 38 L.Ed.2d 101; *United States v. Miles*, 468 F.2d 482, 486 (3d Cir. 1972). Probable cause in this case was supplied by Judson Washington, an eyewitness, who reported the crime and gave a statement to police. There is a substantial basis for crediting the information of an eyewitness. See *Commonwealth v. Stokes*, 480 Pa. 38, 44, 389 A.2d 74, 77 (1978). Further, Detective Herbert Winston, who traveled to New York to take Irving into custody, had conducted the interview with Washington. Thus, there was sufficient probable cause for Irving's warrantless arrest within the knowledge of the arresting officer. See *Commonwealth v. Stokes*, supra.

▮ Next, Irving claims the Commonwealth improperly induced him to confess by confronting him, prior to giving him *Miranda* warnings, with the fact that his co-defendant had been arrested. We need not reach the merits of this claim. Since Irving's motion to suppress did not challenge the admissibility of his statement on this specific ground, no testimony on this point was offered by the Commonwealth and this claim was not considered in the suppression court's opinion.[2] In *Commonwealth v. Baylis*, 477 Pa. 472, 384 A.2d 1185 (1978), we concluded that the specificity requirement of Pa.R.Crim.P. 323(d) was mandatory. See also *Common-*

---

2. In his motion to suppress, Irving represented that he was not advised of his *Miranda* rights; that he did not validly waive his rights; and, that he was coerced into giving a statement against his will. The suppression court found that Irving was fully and completely warned as to his rights; that he effectively waived those rights; and, that he gave a voluntary statement.

*wealth v. Simmons*, 482 Pa. 496, 394 A.2d 431 (1978). Thus, Irving's present claim has been waived.

Next, Irving argues the suppression court improperly permitted the Commonwealth, after resting its case, to present additional testimony that his statement was not the product of unnecessary delay between arrest and arraignment. A review of the record shows the court properly exercised its discretion in this matter.

Irving's application to dismiss the charges against him alleged, inter alia, that he was denied "an immediate preliminary arraignment" as required by Pa.R.Crim.P. 130 and that, hence, his statements were unconstitutionally obtained. Since the Commonwealth intended to introduce only the incriminating statement given to the Philadelphia police concerning the homicide of Hattie Jones and since Irving did not specifically allege that this statement was improperly induced by events in New York, the Commonwealth presented no testimony at the suppression hearing concerning the period of Irving's custody in New York from November 24 to December 5, 1975. Further, the Commonwealth's witnesses were not cross-examined by Irving on this matter.

After both sides had rested, defense counsel asserted for the first time that "it is incumbent upon the prosecution to show that this defendant didn't believe that he had to give a statement based on prior unfair treatment by the federal and New York State authorities . . . ." At that point, the court asked the prosecution to submit legal authority on the question of whether the Commonwealth's burden of proving a voluntary statement included a requirement of showing the statement was not coerced by what transpired in New York, even though no evidence to suggest such influence had been received. At the request of the Commonwealth, the court permitted the prosecution to reopen its case and present evidence with respect to what occurred in New York prior to Irving's extradition to Philadelphia. Thereafter, on May 18, 1976, the Commonwealth offered the testimony of F.B.I. and New York law enforcement agents to prove Irving was not unfairly treated while in custody in

New York and to explain the reason for the two-week delay between the arrest and the extradition hearing.

■■■■ As we stated in *Commonwealth v. Deitch Co.,* 449 Pa. 88, 100, 295 A.2d 834, 841 (1972), the general rule is that prior to rendering its decision, a court may, in its discretion, permit either side to re-open its case to present additional testimony. Instantly, the court exercised proper discretion in allowing the Commonwealth to reopen its case since, prior to resting, the Commonwealth was unaware this specific issue was being raised.

■■■■ Finally, Irving maintains the evidence was not sufficient to convict him of murder of the third degree since he was merely a bystander and not responsible for Holloway's acts. The evidence established Irving and Holloway had visited Hattie Jones on February 12, 1975 to purchase marijuana. They returned the next day to collect money owed to them by Jones. Prior to the second visit, Holloway gave Irving a gun saying: "You may not have to use it but if something jumps off you will have it." Irving was aware that Holloway was also armed. Although Irving was not present in Jones' room at the time of the shooting, he used his gun to bar another person from interfering with Holloway's efforts to get money from Jones by force. In the course of these events, Hattie Jones was shot twice in the head and abdomen by Holloway which caused her death. Irving and Holloway fled the scene and traveled to New York.

Irving does not dispute the fact that Holloway shot Jones without legal provocation in a vital part of the body. This, in addition to the fact that Holloway went to Jones' residence armed with a loaded weapon to collect money owed him which Jones was either unable or unwilling to pay, allows an inference of malice which would support a verdict of murder of the third degree against Holloway. See *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976). Irving's active participation in the commission of the killing qualified him as an accomplice of Holloway. Thus, the

evidence was sufficient to convict Irving of murder of the third degree under 18 Pa.C.S.A. § 306.

Judgments of sentence affirmed.

MANDERINO, J., did not participate in the consideration or decision of this case.