J-A17004-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DEVON RODRIGUEZ | |
| Appellant | No. 1322 EDA 2013 |

Appeal from the Judgment of Sentence March 28, 2013
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0008619-2012

BEFORE: GANTMAN, P.J., PANELLA, J., and STABILE, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED AUGUST 04, 2014**

Appellant, Devon Rodriguez, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his bench trial convictions for robbery, theft by unlawful taking, and receiving stolen property.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. On July 1, 2012, Victim was walking near 15th and Oxford Streets in Philadelphia, on the campus of Temple University, when a man snatched her phone, wallet, and paycheck from her hand, and then ran northbound on Sydenham Street.  Victim notified police and described the perpetrator as a black male, 24-25 years old, wearing a black shirt, denim shorts, black

---

[1] 18 Pa.C.S.A. §§ 3701(a)(iv); 3921(a); and 3925(a) respectively.

sneakers, and having a mini afro, last seen running northbound on Sydenham Street. Detective Jim Rago investigated video footage of nearby surveillance cameras but did not find footage of the actual crime. Nevertheless, Detective Rago found video footage one block from the crime scene of a man who fit Victim's description, running northbound on Sydenham Street suspiciously looking behind him toward the crime scene. Police generated pictures of the suspect's face from the footage and distributed flyers to Temple University Police.

On July 2, 2012, Temple University Police Officer Daniel Paris was given one of the flyers at roll call. At approximately 6:00 p.m., Officer Paris was on patrol two blocks from the crime scene when he saw Appellant walking on campus. Officer Paris concluded Appellant matched the perpetrator depicted in the flyer. Specifically, Officer Paris noted that Appellant's face, beard, and hair were consistent with Victim's description of the suspect and the photograph on the flyer. Officer Paris radioed central detectives who instructed Officer Paris to bring Appellant in for an interview. Officer Paris told Appellant detectives wanted to speak with him about an incident that occurred the day before, placed Appellant in the back of his patrol car in handcuffs, and brought him to police headquarters. At the station, police concluded Appellant was the man on the flyer and applied for a search warrant for Appellant's residence, which was approved.

At 11:50 p.m., police executed the search warrant for the residence of

Appellant, where they recovered a pair of sneakers and three-quarter length pants, which exactly matched the suspect's pants in the surveillance video. Detectives concluded the search at 2:00 a.m. and returned to the station. Detectives were unable to continue the investigation due to overtime restrictions, so police held Appellant in custody overnight. On July 3, 2012, the detectives resumed the investigation at 5:15 p.m. when their shift started. Detectives advised Appellant of his **Miranda**[2] rights and then spoke with him for a half-hour, during which time Appellant confessed to the robbery.

The Commonwealth charged Appellant with robbery, theft by unlawful taking, receiving stolen property, and simple assault. On August 21, 2012, Appellant filed a suppression motion. The court held a suppression hearing on March 28, 2013, at which time Appellant argued police lacked probable cause for his arrest, and Appellant's confession was therefore fruit of the poisonous tree; and challenging the validity of the search warrant based on alleged insufficiency in the affidavit of probable cause. At the conclusion of the hearing, the court denied Appellant's motion. That same day, the court conducted a bench trial and convicted Appellant of robbery, theft by unlawful taking, and receiving stolen property; the court found Appellant not guilty on the simple assault charge. Immediately following trial, the court sentenced

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Appellant to an aggregate term of one (1) to two (2) years' imprisonment, plus three (3) years' probation. Appellant timely filed a notice of appeal on April 26, 2013. On May 3, 2013, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), which Appellant timely filed on May 23, 2013. On May 28, 2013, without leave of court, Appellant filed an amended Rule 1925(b) statement.

Appellant raises one issue for our review:

> DID THE TRIAL COURT ERR WHEN IT DENIED [APPELLANT'S] PRE-TRIAL MOTION TO SUPPRESS EVEN THOUGH [APPELLANT] WAS TAKEN INTO CUSTODY AND ARRESTED ON LESS THAN PROBABLE CAUSE, WITHOUT REASONABLE SUSPICION, WITHOUT A WARRANT AND WITHOUT EXIGENT CIRCUMSTANCES, AND WHERE PHYSICAL EVIDENCE WAS SUBSEQUENTLY SEIZED AND AN OUT-OF-COURT STATEMENT SUBSEQUENTLY TAKEN, AND [ARE] EXCLUDABLE AS FRUIT OF THE POISONOUS TREE?

(Appellant's Brief at 3).

Appellant argues Officer Paris lacked probable cause to detain him based solely on Appellant's resemblance to the man depicted in the wanted flyer. Appellant asserts Officer Paris did not watch the surveillance video prior to Appellant's arrest. Appellant claims the surveillance video did not capture Appellant actually committing the crime. Appellant stresses he was not wearing clothing or sneakers at the time of his arrest consistent with Victim's depiction of the perpetrator. Appellant contends police did not ask Victim to come to the police station to identify Appellant as the perpetrator or supply police with a composite sketch of the perpetrator. Appellant

maintains Officer Paris did not engage in a meaningful conversation with Appellant to provide additional justification for the arrest aside from the officer's reliance on the wanted flyer to supply probable cause. Appellant declares police lacked probable cause to arrest Appellant, and any physical evidence seized and Appellant's confession, are inadmissible under the fruit of the poisonous tree doctrine.

Additionally, Appellant reasons Officer Paris' reliance on the wanted flyer did not supply probable cause necessary for issuance of a search warrant of Appellant's residence, and nothing in the record suggested Appellant would have contraband at his home, to justify issuance of a search warrant; the court should have suppressed the physical evidence seized for these reasons as well. Appellant concludes the court should have suppressed the physical evidence seized and Appellant's confession, and this Court must reverse the order denying suppression. We disagree.

As a preliminary matter: "Any issues not raised in a [Rule] 1925(b) statement will be deemed waived." *Commonwealth v. Castillo*, 585 Pa. 395, 403, 888 A.2d 775, 780 (2005) (quoting *Commonwealth v. Lord*, 553 Pa. 415, 420, 719 A.2d 306, 309 (1998)). "*Castillo*'s prohibition against the filing of untimely [Rule] 1925(b) statements extends to the filing of untimely supplemental [Rule] 1925(b) statements without leave of court." *Commonwealth v. Jackson*, 900 A.2d 936, 939 (Pa.Super. 2006), *appeal denied*, 597 Pa. 712, 951 A.2d 1161 (2008) (holding appellant waived

certain issues for appeal, which he raised for first time in untimely supplemental Rule 1925(b) statement that he filed without leave of court). *See also Commonwealth v. Woods*, 909 A.2d 372 (Pa.Super. 2006), *appeal denied*, 591 Pa. 714, 919 A.2d 957 (2007) (holding appellant who has filed timely Rule 1925(b) statement, and then for good cause shown discovers additional time is required to file supplemental Rule 1925(b) statement, must file separate petition seeking permission to file supplemental statement *nunc pro tunc*, and obtain order granting request for extension before issues raised in untimely supplemental statement will be preserved for appellate review; appellant waived certain issues on appeal where he did not file separate petition seeking prior court approval before filing untimely supplemental statement).

Additionally, Pa.R.Crim.P. 581(D) requires that a motion to suppress must state: (1) specifically and with particularity the evidence sought to be suppressed; (2) the grounds for suppression; and (3) the facts and events in support thereof. Pa.R.Crim.P. 581(D). *See also Commonwealth v. Irving*, 485 Pa. 596, 403 A.2d 549 (1979), *cert. denied*, 444 U.S. 1020, 100 S.Ct. 676, 62 L.Ed.2d 651 (1980) (explaining specificity requirement of Rule 581(D) is mandatory).

Instantly, on May 3, 2013, the court ordered Appellant to file a Rule 1925(b) statement within twenty-one days. Appellant timely complied on May 23, 2013, raising one issue: "Did the [trial] [c]ourt err in denying

[Appellant's] pre-trial motion to suppress [Appellant's] statement following his arrest?" (Appellant's Rule 1925(b) Statement, 5/23/13, at 1). On May 28, 2013, without leave of court, Appellant filed an untimely, amended Rule 1925(b) statement, repeating the claim raised in his initial concise statement and adding the following issue: "Did the [trial] [c]ourt err in denying [Appellant's] pre-trial motion to suppress physical evidence recovered from [Appellant] at the time of his arrest?" (Appellant's Amended Rule 1925(b) Statement, 5/28/13, at 1). Because Appellant did not obtain court approval before filling his amended statement, Appellant's argument regarding the suppression of physical evidence is waived for purposes of appellate review.[3] **See Castillo, supra**; **Woods, supra**; **Jackson, supra**. Additionally, the record makes clear police did not seize physical evidence from Appellant **at the time of his arrest**, as suggested by Appellant's amended concise statement. Rather, police secured a search warrant and recovered physical evidence from Appellant's residence as a result of execution of the search warrant.

Further, Appellant's complaint about the validity of the search warrant was not in Appellant's initial concise statement or his amended concise statement. Thus, even if Appellant had timely filed his amended concise

_____

[3] On June 11, 2014, Appellant filed an Application for Relief with this Court, seeking to attach his amended Rule 1925(b) statement to his appellate brief. Based on our disposition, we deny the motion as moot.

statement, his issue concerning the validity of the search warrant would nevertheless be waived. **See Castillo, supra**. **See also Commonwealth v. Reeves**, 907 A.2d 1 (Pa.Super. 2006), *appeal denied*, 591 Pa. 712, 919 A.2d 956 (2007) (explaining concise statement which is too vague to allow court to identify issues raised on appeal is functional equivalent of no concise statement at all; if concise statement is too vague, court may find waiver and disregard any argument).[4]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Diana Anhalt, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed November 5, 2013, at 5-8) (finding: Officer Paris stopped Appellant based on person-of-interest wanted flyer; police constructed flyer based on surveillance footage near time of robbery showing person who matched Victim's description of perpetrator, running in same direction Victim had last seen perpetrator, and engaging in suspicious activity; when detained by Officer Paris, Appellant was in general area where

_____

[4] Moreover, Appellant's suppression motion contains nothing more than boilerplate language with respect to his complaint regarding physical evidence and appears to be a generic form/template suppression motion. Significantly, Appellant's suppression motion failed to comply with the specificity requirements of Rule 581(D), which arguably justifies waiver of Appellant's complaints concerning the physical evidence seized on this basis as well. **See** Pa.R.Crim.P. 581(D); **Irving, supra**.

robbery occurred, within approximately twenty-four hours of crime; Appellant had same beard, hair style, build, and complexion as person in wanted flyer; Officer Paris had reasonably trustworthy information regarding description of suspect; testimony of Officer Paris was credible; based on totality of circumstances, Officer Paris had probable cause to arrest Appellant; thus, Appellant's confession was not fruit of poisonous tree).[5, 6]

Moreover, not all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police; the relevant inquiry is whether such evidence "has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, ___ (1963) (internal citations omitted). Our Supreme Court has explained:

> [I]n *Wong Sun*, the Supreme Court articulated at least two instances wherein a post-illegal arrest confession is admissible: (1) [i]f the confession is sufficiently an act of

---

[5] For these reasons, the court also concluded the physical evidence seized from Appellant's residence was not fruit of the poisonous tree. (*See* Trial Court Opinion at 7.) The facts which supplied probable cause for Appellant's arrest are the same as those set forth in the Commonwealth's search warrant application. Thus, had Appellant properly preserved his challenge to the validity of the search warrant, we would agree with the trial court that his claim would still afford him no relief.

[6] On page six of its opinion, the trial court refers to a case named *Commonwealth v. Rivers*. A reading of the court's opinion in its entirety shows the court meant to cite *Commonwealth v. Riley*, 425 A.2d 813 (Pa.Super. 1981).

free will to purge the primary taint of the unlawful invasion[;] or (2) [i]f the connection between the arrest and the statement had become so attenuated as to dissipate the taint.

*Commonwealth v. Bishop*, 425 Pa. 175, 182-83, 228 A.2d 661, 665-66 (1967), *cert. denied*, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967) (internal citations and quotation marks omitted).

Thus, the lack of probable cause does not automatically necessitate suppression of a defendant's confession following an illegal arrest. *Commonwealth v. Smith*, 606 Pa. 127, 145, 995 A.2d 1143, 1153 (2010), *cert. denied*, ___ U.S. ___, 131 S.Ct. 518, 178 L.Ed.2d 382 (2010) (holding appellant's confession following illegal arrest based on expired warrant did not necessitate suppression of appellant's subsequent confession where police issued appellant *Miranda* warnings, appellant waived *Miranda* rights, and confessed; appellant's confession was not elicited by police conduct). Each case must be evaluated in light of the following factors:

> (1) whether *Miranda* warnings were given; (2) the temporal proximity of the arrest and the confession; (3) the presence of intervening circumstances; and, (4) the purpose and flagrancy of the official misconduct. The voluntariness of the statement is, of course, a threshold requirement, and the confession must also be free of any element of coerciveness due to the unlawful arrest.

*Id.* at 143, 995 A.2d at 1152 (internal citations and quotation marks omitted). *See also Commonwealth v. Williams*, 2 A.3d 611, 621 (Pa.Super. 2010) (*en banc*), *appeal denied*, 610 Pa. 585, 19 A.3d 1051 (2011) (holding any applicable taint to physical evidence seized stemming

from warrantless seizure of vehicle was purged by securing search warrant and canine sniff that were not premised upon facts obtained as result of warrantless seizure of vehicle).

Instantly, even if Officer Paris lacked probable cause to detain Appellant, Appellant's confession would not warrant suppression. The record makes clear: (1) police issued Appellant **Miranda** warnings twice, once orally and once in written form prior to Appellant's confession; (2) detectives conducted a formal interview of Appellant less than twenty-four hours after Officer Paris made initial contact with Appellant, and Appellant confessed during that timeframe; Appellant waived his right to counsel, and confessed to the robbery approximately one-half hour into the interview; (3) police required Appellant to spend the night at central headquarters, but only because of the restriction on the detectives' overtime, and not to induce Appellant to confess; and (4) Appellant did not ask to leave at any time and police provided Appellant with food, water and a bathroom, consistent with police procedure. The record demonstrates no evidence of flagrant police misconduct. Thus, under the **Smith** factors, even if police initially lacked probable cause to arrest Appellant, Appellant's confession would still be valid and not warrant suppression. **See Smith, supra**. Accordingly, we affirm on the basis of the trial court's opinion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/4/2014</u>

| COMMONWEALTH | : | NO.: CP-51-CR-0008619-2012 |
| OF PENNSYLVANIA | : | |
| | : | |
| v. | : | Superior Court No.: |
| | : | 1322 EDA 2013 |
| DEVON RODRIGUEZ | : | |

**FILED**

**OPINION**

NOV 0 5 2013

Criminal Appeals Unit
First Judicial District of PA

**ANHALT, J.**

Appellant in the above-captioned matter appeals this Court's denial of his motion to suppress the statement and physical evidence obtained after Appellant's arrest. The Court submits the following Opinion in accordance with the requirements of Pa. R. A. P. 1925. For the reasons set forth herein, this Court's decision should be affirmed.

## PROCEDURAL HISTORY

On July 2, 2012, Appellant, Devon Rodriguez, was arrested and charged with Robbery, Theft By Unlawful Taking, Receiving Stolen Property, and Simple Assault. On March 28, 2013, Appellant brought a Motion to Suppress before this Court. After hearing the evidence presented, the Court denied the motion. After a trial on the same day, the Court found Appellant guilty of Robbery, Theft By Unlawful Taking, and Receiving Stolen Property. The Court sentenced him to one to two years in prison followed by three years of reporting probation.

Appellant filed this timely appeal of the Court's decision on April 26, 2013. On May 3, 2013, this Court ordered Appellant to file a concise statement of the matters complained of on appeal pursuant to Rule 1925(b) of the Pa. R. A. P. Appellant filed his 1925(b) Statement with

CP-51-CR-0008619-2012 Comm. v. Rodriguez, Devon
Opinion



7081857821

the Court on May 22, 2013 and then filed an Amended 1925(b) Statement on May 28, 2013.

Appellant argues that the Court erred in denying his Motion to Suppress.

## FACTUAL HISTORY

At the hearing on Appellant's Motion to Suppress, Temple University Police Officer

Daniel Paris testified that on July 2, 2012, at approximately 6:00 p.m., his roll call during his tour

of duty took him to the 1800 block of North 15th Street between Montgomery and Norris in the

city and county of Philadelphia. (N.T. Motion, 3/28/13, pp. 5-6). Officer Paris went to that area

as a result of information that was given to him at roll call which was a person of interest poster

from Temple University for a robbery the day before at 15th and Oxford. (N.T. Motion, 3/28/13,

pp. 5-6). While traveling southbound on 15th Street, Officer Paris testified that he noticed this

individual [Appellant] with a goatee beard wearing black Muslim style cut pants and red

sneakers who matched the person from the poster. (N.T. Motion, 3/28/13, p. 7). Officer Paris

testified that he then stopped the Appellant for identification purposes and compared Appellant

to the individual in the wanted poster. (N.T. Motion, 3/28/13, pp. 7, 9). Officer Paris testified

that he concluded that Appellant was the individual in the photo from the sneakers and the low

cut pants, the beard, and the way his hair was on top real scruffy like in the poster. (N.T. Motion,

3/28/13, pp. 9-10). At that point, Officer Paris called central detectives who said to bring

Appellant in for an interview. (N.T. Motion, 3/28/13, p. 8, 10). Officer Paris then brought

Appellant to central detectives and after he conferred with the detectives about the wanted poster

and the Appellant, they conclude that they had picked up the right guy from the poster. (N.T.

Motion, 3/28/13, p. 10). Officer Paris testified that it was his understanding that the wanted

poster came from a surveillance video from one of the buildings around Temple University from

the previous day when the robbery occurred. (N.T. Motion, 3/28/13, p. 10-11). The wanted

2

poster was all that Officer Paris relied on in making his stop of the Appellant. The wanted poster was shown to the Court and entered into evidence.

Detective Jim Rago testified at the hearing that on July 1, 2012, at approximately 12:50 p.m., he received a report of a robbery taking place at the 1500 block of West Oxford Street. (N.T. Motion, 3/28/13, p. 23). A short time after that a surveillance video came in that Detective Rago reviewed with other detectives from his unit. (N.T. Motion, 3/28/13, p. 23). The video was based on a compilation of things passed over both Philadelphia and Temple police radio as well as the police department report of the incident, which gave the complainant's description of the perpetrator as black male around 24-25 years of age, wearing a black shirt, denim shorts, black sneakers, and a mini afro, last seen running northbound on Sydenham Street. Therefore, Detective Rago looked for video in the closest surrounding areas of the location of the occurrence which was 1525 Oxford Street both 15 to 20 minutes before and 15 to 20 minutes after the occurrence. (N.T. Motion, 3/28/13, pp. 24-25, 29). Several different cameras were reviewed and it was determined that the best location of the surveillance video would be in the area of Sydenham Street and Cecil B. Moore Avenue as it was the only video that showed someone acting so out of character in comparison to everyone else. (N.T. Motion, 3/28/13, pp. 24-25). The surveillance video showed an African-American male who is dressed similarly to what was listed in the police report, at around the same time that the robbery incident was reported, running northbound on Sydenham Street and then he runs out of view, the video skips, but then it turns around and several seconds later that same male is seen again running southbound on Sydenham Street. (N.T. Motion, 3/28/13, pp. 25-26). Sydenham Street is between 15th and 16th Street about one block over from 1525 Oxford Street where the robbery incident occurred. (N.T. Motion, 3/28/13, p. 26). The video was then shown to the Court and

3

placed into evidence. Detective Rago testified that they pulled the still picture from this video and created the wanted poster which was dissimulated to the Philadelphia and Temple police around 24 hours after the robbery incident. (N.T. Motion, 3/28/13, pp. 27-28).

Detective Ralph Domenic testified at the hearing that back on July 2, 2012, he was working as a Philadelphia police detective and on that day he became involved in an investigation of the Appellant. (N.T. Motion, 3/28/13, p. 36). Detective Domenic testified that Temple University police officers had stopped the Appellant in reference to a robbery committed the day before based on a photo that was taken by Temple University surveillance cameras. The Temple police officers had come to the detectives with a photo and Detective Domenic testified that they were convinced that Appellant was the male in the photo. (N.T. Motion, 3/28/13, p. 36). After viewing the photo and Appellant, Detective Domenic also became convinced that Appellant was the one in the photo because of the similar features of both. (N.T. Motion, 3/28/13, p. 36-37). Detective Domenic stated that the specific similar features were "his face, his build, at the time his hair." (N.T. Motion, 3/28/13, p. 37). Based on Appellant's similarity to the male in the photo, Detective Domenic applied for a search warrant of the room where Appellant was staying which was approved based on that information. (N.T. Motion, 3/28/13, p. 37). Later that evening around 11:50 p.m., Detective Domenic went out with other officers to execute the warrant and they recovered from Appellant's room a pair of orange sneakers and three quarter length pants that seemed to be the exact ones from the poster. (N.T. Motion, 3/28/13, p. 39). The next day Detective Domenic returned to the station and interviewed the Appellant around 5:15 p.m. Detective Domenic testified that he and other detectives first advised Appellant of his Miranda warnings, then spoke to him about the robbery for about a half

4

hour, and then around 5:45 they typed a formal interview where the Appellant confessed to committing the robbery. (N.T. Motion, 3/28/13, pp. 40-41).

## DISCUSSION

Appellant contends that the Court erred in denying his Motion to Suppress the statement and physical evidence obtained after Appellant's arrest because there was no probable cause to arrest the Appellant.

The standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Cmmw. v. Jones, 988 A.2d 649, 654-56 (Pa. 2010). Because the Commonwealth prevailed before the suppression court, the reviewing court may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Id. Where the suppression court's factual findings are supported by the record, we are bound by these findings and may reverse only if the court's legal conclusions are erroneous. Id.

Probable cause sufficient to justify a warrantless arrest is determined by the "totality of the circumstances." Cmmw. v. Banks, 658 A.2d 752, 752 (Pa. 1995). Probable cause for arrests exists if facts and circumstances which are within the knowledge of the officer at time of arrest, and of which he has reasonably trustworthy information, are sufficient to warrant man of reasonable caution in belief that suspect has committed or is committing a crime. Cmmw. v. Culmer, 344 A.2d 487 (Pa. 1975); Cmmw. v. Hicks, 253 A.2d 276, 279 (Pa. 1969). In Culmer, the police officer arrested the defendant based on a detailed description supplied by two eyewitnesses and a composite drawing made from description. The PA Supreme Court held that arresting police officer had sufficient information to establish probable cause to arrest the

defendant and therefore defendant's confession was not product of illegal arrest. The Court stated that it did not here have to be concerned with the reliability or the source of the officer's information since it was satisfied that the observations of the officer after his receipt of the information supplied the probable cause which justified the arrest. Furthermore, the PA Superior Court in Cmmw. v. Riley, 425 A.2d 813 (Pa. Super. 1981), held that probable cause for warrantless arrest must be determined on basis of knowledge of arresting officer at time of the arrest. The Court stated that, in hindsight, it would not invalidate an arrest when arresting officer reasonably relied upon information which he had no reason to believe was incorrect.

Here, similar to Culmer and Rivers, probable cause existed to arrest the Appellant. This is based on the totality of the circumstances and what was within the knowledge of Officer Paris at the time of arrest, and of which he had reasonably trustworthy information. Officer Paris stopped the Appellant based on a person of interest wanted poster where the individual in the picture looked like the Appellant with the short afro, the beard, and the smaller build. This is what police officers are trained to do. Officer Paris encountered the Appellant in the general area of where the robbery incident occurred approximately 24 hours or so after the report of the incident. He compared Appellant to the picture that he had in his possession that was taken from video surveillance and was based on a combination of the video and the description of the complainant which was a black male around 24-25 years of age, wearing a black shirt, denim shorts, black sneakers, and a mini afro, last seen running northbound on Sydenham Street. The video was watched by Detective Rago who investigated Temple University surveillance cameras from 15 to 20 minutes before and 15 to 20 minutes after the robbery incident and there was no suspicious activity of anybody during that time period except for the individual who was running down Sydenham Street from the direction where the robbery took place. The wanted poster was

6

created for that individual and the Court concluded that there was probable cause that individual had committed the crime. The argument that Officer Paris was not relying on a valid wanted poster as it never was seen by complainant in this case would also fail based on the Superior Court holding in Riley that probable cause for warrantless arrest must be determined on the basis of knowledge of arresting officer at time of the arrest.

The Court concluded that Officer Paris had probable cause to stop and arrest Appellant on the street based on the information he had in his possession. Officer Paris pulled out the wanted poster, made an examination of it, and concluded that the Appellant was the individual in the poster from the sneakers and the low cut pants, the beard, and the way his hair was on top real scruffy like in the poster. He then brought Appellant down to central detectives where Detective Dominic also concluded that Appellant was the one in the photo because of the similar features of both. Detective Domenic stated that the specific similar features were "his face, his build, at the time his hair." (N.T. Motion, 3/28/13, p. 36-37). Therefore, because there was probable cause to stop and arrest the Appellant, the physical evidence and the statement later obtained from the Appellant were not the fruits of the poisonous tree.

Furthermore, questions of witness credibility and the weight to be afforded the evidence are within the sole province of the finder of fact, who is free to believe all, part, or none of the evidence. Commonwealth v. Woods, 432 Pa. Super. 428, 638 A.2d 1013, 1015 (1994); Commonwealth v. Mayfield, 401 Pa. Super. 560, 585 A.2d 1069 (1991). Here, there is nothing in the record to conclude that any of the officers' or detectives' testimony was anything but entirely reasonable and credible. Therefore, Appellant's motion to suppress was properly denied.

7

## CONCLUSION

For the foregoing reasons, the Court's denial of Appellant's Motion to Suppress should be affirmed.


BY THE COURT:

DIANA ANHALT, J.


October 31, 2013

8

## **PROOF OF SERVICE**

I hereby certify that on the date set forth below, I caused an original copy of the Judicial Opinion to be served upon the persons at following locations, which service satisfies the requirements of Pa.R.A.P. 122:

Andrew G. Gay, Jr., Esquire
Law Office of Andrew G. Gay, Jr., LLC
1731 Spring Garden Street
Philadelphia, PA 19130

Hugh Burns, Esquire
Philadelphia District Attorneys Office
Three South Penn Square
Philadelphia, PA 19107

Date:___11/5/13___

By:___Diana Anhalt___
Diana Anhalt, Judge