J-S32042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| v. | |
| MICHAEL TORRES | |
| Appellant | No. 2415 EDA 2016 |

Appeal from the Judgment of Sentence July 22, 2016
in the Court of Common Pleas of Philadelphia County Criminal Division
at No(s): CP-51-CR-0000548-2014

BEFORE: GANTMAN, P.J., STABILE, and FITZGERALD[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                     **FILED JULY 17, 2017**

Appellant, Michael Torres, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas. His attorney, John Belli, Esq. ("Counsel"), has filed an ***Anders***[1] petition for leave to withdraw. Appellant's counsel identifies the following issues on appeal: whether the suppression court erred by (1) denying Appellant's motion to reveal the identity of the confidential informant ("CI"), and (2) denying the motion to suppress the items found in the van and Appellant's home; and whether the evidence was insufficient to sustain Appellant's drug and weapons convictions. We grant counsel's petition to withdraw and affirm.

We glean the facts from the record.

---

[*] Former Justice specially assigned to the Superior Court.

[1] ***Anders v. California***, 386 U.S. 738 (1967).

At the suppression hearing, Police Officer Charles Kapusniak testified for the Commonwealth. Officer Kapusniak testified that on October 3, 2013, he and his partner Officer Stephen Dmytryk went to investigate following a complaint "in reference to a Hispanic male that lives at 940 East Russell Street. The name was Mikey, nickname." N.T., 7/10/15, at 9-10. "I had a brief description, and that he was using a white custom van that was parked in front of that location to store and provide drugs for H and Russell at that time." *Id.* at 10. The van had "a Pennsylvania tag of John George Dan 5667." *Id.* at 11. The officer identified Appellant as an individual he saw when Appellant exited 940 Russell Street. *Id.*

Officer Kapusniak testified that Appellant "met up with a male . . . who was later identified as Eduardo Borges." *Id.* "Mr. Borges handed [Appellant] United States currency[,]" and Appellant went to the van. *Id.* Appellant leaned inside the van, "shut the door and then he handed small clear baggies to Mr. Borges." *Id.* at 12.

The officers then went to pick up the CI. *Id.* After searching the CI, they gave the CI "$40 prerecorded buy money" and took him "back to that location." *Id.* at 13. The officers "set up surveillance in the same spot" and saw the CI give Appellant the prerecorded buy money. *Id.* Appellant "turned and pointed to where Mr. Borges was . . . ." The CI "walked up to Mr. Borges and had a hand-to-hand transaction." *Id.* The CI "immediately" returned to the officers "and turned over four clear packets contain[ing] an

off-white chunky substance of alleged crack cocaine and orange tinted packets containing a green leafy substance of alleged marijuana." *Id.* at 14.

The officers returned to the same location on October 8, 2013. *Id.* at 15. The CI had $40 in prerecorded buy money. *Id.* The CI gave Mr. Borges the buy money. *Id.* He "directed the CI westbound towards 8th Street." *Id.* Mr. Borges walked towards the white van and Appellant "got out of the driver's side of the van and handed Mr. Borges the clear bags again." *Id.* at 15-16. The CI "turned over to Police Officer Dmytryk two clear packets containing green leafy substance of alleged marijuana and four blue tinted packets containing an off-white chunky substance of alleged crack cocaine." *Id.* at 17.

On October 9, 2013, Officer Kapusniak, Officer Dmytryk and "the rest of the squad" went to the same location. *Id.* at 18. Officer Kapusniak "had two search warrants in hand, one for the white van and one for the property of 940 Russell Street." *Id.* "And in [Officer Kapusniak's] presence, Police Officer Rhodes . . . stopped Eduardo Borges at H and Russell, the 800 block. And off his person, he recovered one clear baggie, which contained 30 peach packets, each containing an off-white chunky substance of alleged crack cocaine, $180-$189 United States currency." *Id*. at 21. "Police Officer Hart, then directed [sic] to the curb line, where I saw Mr. Borges going, and he recovered two clear jars containing green leafy substance, and one clear

capsule . . . which contained an off-white chunky substance of alleged crack cocaine." *Id.* at 22.

Police Officer Dmytryk stopped Appellant and "[r]ecovered from his person was $2036 of United States currency, one set of keys that worked a door for 940 Russell and the van, two cell phones and one ID card." *Id.* They then executed a search warrant at 940 Russell Street. *Id.* Police Officer Holtz recovered "an additional $910 United States currency, three photos, and one letter with [Appellant's] picture and the name of Michael Torres on the letter" from the second floor rear bedroom. *Id.*

At the same time, a search warrant "was executed on the white Ford van with the tag of JGD5667." *Id.* "And as soon as Officer Dmytryk open [sic] the driver's side door, where I saw [Appellant] lean in, on the floor was one silver Taurus .44 caliber handgun . . . and that was loaded with five live rounds." *Id.* at 23. Officer Ward, in Officer Kapusniak's presence, recovered a 9mm Kruger "loaded with thirteen live rounds." *Id.* Inside the van "[t]here were five clear freezer baggies and one sneaker box which contained a total of 992 clear and yellow—there were different amounts of some clear, some yellow. Each of the packets contained a green leafy substance of alleged marijuana. There were 510 clear packets, 243 peach packets, and 92 blue packets, all containing an off-white chunky substance of alleged crack cocaine." *Id.* There were also four blue packets containing white powder cocaine. *Id.* at 24. "There was one pill bottle with no label

containing 60 white Percocets. There was another pill bottle with no label containing 80 blue Xanax." *Id.* There was ammunition for various caliber guns and magazines for semiautomatic weapons. *Id.* "There was a scale. There was [sic] new and unused capsules." *Id.*

Officer Kapusniak testified that he used the CI ten or fifteen times and Officer Dmytryk used him for several years. *Id.* at 25. The CI is still serving as an informant and has led to other arrests. *Id.* He testified that the identity of CIs is not revealed "[b]asically for their safety." *Id.* at 8. If their identity were revealed, the fear is "death" of the CI "[a]nd possibly their family's." *Id.*

At trial, Officer Kapusniak testified that on October 3, 2013, he and Officer Dmytryk were investigating complaints about drug dealing in the area of 940 East Russell Street in Philadelphia. N.T., 5/18/16, at 10-12. They went to the area in an unmarked vehicle. *Id.* at 13. Appellant exited 940 East Russell Street and met an individual named Eduardo Borges. *Id.* Mr. Borges "handed him an undetermined amount of United States currency." *Id.* Appellant went to a "white custom van. He got to the door of the van. The van was parked just outside 940 Russell." *Id.* He opened the van with a key and leaned in the driver's side of the van. *Id.* at 14. "He exited, shut the door, and he walked over to Mr. Borges and handed him clear baggies." *Id.* Appellant and Mr. Borges then walked westbound down the street. *Id.* at 14, 18. The officers then left the location and picked up the CI. *Id.* at

18. They called the CI and told him they needed him "to attempt to make a purchase in the area of 900 Russell Street." *Id.*

They picked up the CI and followed the procedure of searching him to be sure he did not have any narcotics or United States currency. *Id.* at 19. The CI was given prerecorded money. *Id.* After he was searched, the CI was taken to the area of 940 Russell Street and instructed to purchase crack cocaine and marijuana. *Id.* at 21. The officers "parked in the same general area" and watched the CI. *Id.*

The CI approached Appellant and handed him the prerecorded money. *Id.* at 22. Appellant pointed the CI toward Mr. Borges. *Id.* The CI and Mr. Borges had a hand-to-hand transaction. *Id.* The CI then "immediately" returned to the officers. *Id.* The CI gave the officers "the items that were purchased." *Id.* at 25. There were "two orange-tinted plastic ziplock packets each containing the marijuana." *Id.* at 28. There were "four clear plastic ziplock packets, each containing an off-white chunky substance of alleged crack cocaine." *Id.*

On October 8, 2013, the officers went back to the same location with the CI. *Id.* at 30. The CI approached Mr. Borges and handed him the prerecorded buy money. *Id.* Mr. Borges walked toward the van and Appellant got out of the van. *Id.* Appellant handed "Mr. Borges clear items again." *Id.* Mr. Borges "has a hand-to-hand transaction with the CI again." *Id.* at 32. The CI was getting ready to leave when Appellant pointed in the

direction of a female. *Id.* at 34. The CI went up to her, had a hand-to-hand transaction, and returned to the officers. *Id.* The CI gave Officer Kapusniak "two clear ziplock packets, both containing alleged marijuana, and four blue tinted ziplock packets, all containing alleged crack cocaine." *Id.* at 35.

Officer Kapusniak then "prepared an affidavit for the search warrant for the van and 940 Russell Street." *Id.* at 37.

The property receipts indicated that Officer Kapusniak got $2,036 in United States currency, two Nokia cell phones, a Pennsylvania driver's license, and two keys from Appellant. *Id.* at 47. One of the keys was for the van and the other was the key to 940 Russell Street. *Id.* The search of the van yielded, *inter alia*, significant amounts of various drugs, ammunition, and two hand guns. *Id.* at 54-58, 123; *see supra.*

Sergeant Stephen Holts testified that he served a warrant on 940 East Russell Street. *Id.* at 125-26. He recovered $910 in United States currency from the second floor rear bedroom.[2] *Id.* at 127. He also recovered the following from the second floor rear bedroom: "Three photos of [Appellant], one Personal Choice ID in the name of [Appellant], one letter addressed to [Appellant] with the address of 940 East Russell Street." *Id.*

---

[2] We note that no prerecorded buy money was found in the bedroom or in the van. *Id.* at 81.

Following a jury trial, Appellant was convicted of the following: possession with intent to deliver a controlled substance ("PWID"),[3] criminal conspiracy to commit PWID,[4] possession of a firearm prohibited[5], carrying a firearm without a license,[6] and carrying a firearm on a public street.[7] Appellant was sentenced to seven-and-one-half to twenty years' imprisonment. This timely appeal followed.

Counsel identifies the following issues in the **Anders** brief:

> 1. The Motions Court erred by denying [A]ppellant's motion to reveal the identity of the confidential informant because the Commonwealth failed to establish that revealing his or her identity would have jeopardized the safety of the informant.
>
> 2. The Motions Court erred by denying [A]ppellant's motion to suppress the items found in the van and [A]ppellant's home because the police failed to establish probable cause to believe that items connected to criminal activity were being stored in either location.
>
> 3. The evidence was insufficient to sustain Appellant's drug and weapons convictions because the Commonwealth failed to establish that Appellant actually or constructively possessed the weapons and drugs located in the van given that Appellant did not own the van.

---

[3] 35 P.S. § 780-113(a)(1).

[4] 18 Pa.C.S. § 903.

[5] 18 Pa.C.S. § 6105(a)(1). We note that this charge was not presented to the jury. The defense stipulated to the evidence and the trial court found Appellant guilty. N.T., 5/19/16, at 15-16.

[6] 18 Pa.C.S. § 6106(a)(1).

[7] 18 Pa.C.S. § 6108.

*Anders* Brief at 13, 22, 28.

As a prefatory matter, we review Counsel's petition to withdraw.

This Court must first pass upon counsel's petition to withdraw before reviewing the merits of the underlying issues presented by [the appellant].

Prior to withdrawing as counsel on a direct appeal under *Anders*, counsel must file a brief that meets the requirements established by our Supreme Court in [*Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009)]. The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's reasons for concluding that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361. Counsel also must provide a copy of the *Anders* brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the *Anders* brief."

*Commonwealth v. Orellana*, 86 A.3d 877, 879-80 (Pa. Super. 2014) (some citations omitted). If counsel complies with these requirements, "we will make a full examination of the proceedings in the lower court and render

an independent judgment [as to] whether the appeal is in fact 'frivolous.'"

*Id.* at 882 n.7 (citation omitted).

Instantly, Counsel provided a factual summary of the case with citations to the record. ***Anders*** Brief at 4-10. Counsel explained the relevant law and discussed why Appellant's claims are meritless, and noted that he found nothing in the record that could arguably support the appeal. *Id.* at 12-35. In conclusion, Counsel's ***Anders*** brief stated:

> After a thorough review of the record in this matter, counsel can find no non-frivolous argument that would support [A]ppellant's claims that the lower court abused its discretion in denying [A]ppellant's motion to suppress. A copy of this brief has been forwarded to [A]ppellant with instructions that if he wishes to retain private counsel or continue *pro se*, or raise any additional arguments or points he should promptly communicate with this Court.

*Id.* at 35. Counsel also provided Appellant with a copy of the ***Anders*** brief and a letter advising Appellant of his rights. Counsel's Mot. to Withdraw, 12/15/16. In light of the foregoing, we hold Counsel has complied with the requirements of ***Santiago***. ***See Orellana***, 86 A.3d at 879-80. Appellant has not filed a *pro se* or counseled brief. We now examine the record to determine whether the issues on appeal are wholly frivolous. ***See id.*** at 882 n.7.

The first issue raised in the ***Anders*** brief is whether the suppression court erred by denying Appellant's motion to reveal the identity of the confidential informant based upon the Commonwealth's failure to establish

that doing so would have jeopardized the safety of the informant. **Anders**

Brief at 13.

Our review is governed by the following principles:

> The appellate standard of review of suppression rulings is well-settled. This Court is bound by those of the suppression court's factual findings which find support in the record, but we are not bound by the court's conclusions of law. When the suppression court's specific factual findings are unannounced, or there is a gap in the findings, the appellate court should consider only the evidence of the prevailing suppression party . . . and the evidence of the other party . . . that, when read in the context of the entire record, remains uncontradicted.

**Commonwealth v. Millner**, 888 A.2d 680, 685 (Pa. 2005) (citations

omitted).[8]

"Our standard of review of claims that a trial court erred in its

disposition of a request for disclosure of an informant's identity is confined to

abuse of discretion." **Commonwealth v. Watson**, 69 A.3d 605, 607 (Pa.

Super. 2013) (citation omitted). This Court opined:

> Under Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where a defendant makes a showing of material need and reasonableness[.]
>
> \* \* \*
>
> The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential source. In order to overcome this qualified privilege and obtain disclosure of a

---

[8] We note that the suppression court did not make factual findings on the record.

confidential informant's identity, a defendant must first establish, pursuant to Rule 573(B)(2)(a)(i), that the information sought is material to the preparation of the defense and that the request is reasonable. Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth.

*Id.* at 607-08 (citations omitted).

"Before an informant's identity may be revealed, the defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will materially aid the defendant in presenting his or her defense and that the information is not obtainable from another source." ***Commonwealth v. Hritz***, 663 A.2d 775, 780 (Pa. Super. 1995) (citation and emplasis omitted). Furthermore, "the safety of the confidential informant is a controlling factor in determining whether to reveal his identity." ***Commonwealth v. Bing***, 713 A.2d 56, 58 (Pa. 1998).

In the case at bar, the officers set up surveillance and saw Mr. Borges give Appellant prerecorded buy money. Officer Kapusniak saw Appellant go to the van and give Mr. Borges small clear baggies. The CI was observed by the officers making the purchases from Borges. Appellant cannot support a claim that the information is not obtainable from another source. ***See Hritz***, 663 A.2d at 780. Additionally, the Commonwealth contended the safety of the CI would be in jeopardy and that the CI is still serving as an informant. ***See Bing***, 713 A.2d at 58. Thus, we discern no abuse of discretion in the

trial court's denial of Appellant's motion to disclose the CI's identity and agree with Counsel that this claim is frivolous. ***See Watson***, 69 A.3d at 607.

Next, the ***Anders*** brief raises the issue of whether the suppression court erred by denying the motion to suppress the items found in the van and Appellant's home because the police failed to establish probable cause to believe that items connected to criminal activity were being stored in either location. ***Anders*** Brief at 22.

In ***Commonwealth v. Jones***, 988 A.2d 649 (Pa. 2010), our Pennsylvania Supreme Court opined:

> Article I, Section 8 and the Fourth Amendment each require that search warrants be supported by probable cause. The linch-pin that has been developed to determine whether it is appropriate to issue a search warrant is the test of probable cause. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that a search should be conducted.
>
> In ***Illinois v. Gates***, [ ] 103 S. Ct. 2317, [ ] (1983), the United States Supreme Court established the totality of the circumstances test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In ***Commonwealth v. Gray***, [ ] 503 A.2d 921 ([Pa.] 1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:
>
> > Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in ***Gates***, the task of an issuing authority is simply to

> make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must accord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.
>
>              \*     \*     \*
>
> [Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant.
>
> ***Commonwealth v. Torres***, [ ] 764 A.2d 532, 537–38, 540 ([Pa.] 2001).

*Id.* at 655 (some citations and quotation marks omitted).

In ***Commonwealth v. Dixon***, 997 A.2d 368 (Pa. Super. 2010) (*en banc*), this Court

> [i]dentif[ied] as factors relevant to a determination of probable cause the professional experience of a police officer in interpreting the actions of those who traffic in controlled substances, an officer's knowledge of drug-trafficking activity in a particular neighborhood, and the movements and manners of the parties to the transaction; [as well as] the experience of a narcotics officer, which allowed him to interpret the way a drug trafficker was acting and to "know in a way a layperson could not that [the officer] was watching a drug sale."

- 14 -

*Id.* at 380 (citations and footnote omitted).

In the case *sub judice*, Officer Kapusniak testified that he and his partner went to investigate a complaint in reference to Appellant who lived at 940 East Russell Street. Officer Kapusniak had a description of Appellant and was told he was using a white custom van parked in front of 940 East Russell Street. On two occasions, the officer observed Appellant take United States currency from Mr. Borges, after which he went to the van and handed small clear baggies to Mr. Borges. Officer Kapusniak arranged two controlled buys through the CI and the informant made two buys from Mr. Borges. Additionally, the officer testified that he saw Appellant go into 940 East Russell Street.

Considering the evidence presented by the Commonwealth, we discern no error by the suppression court. *See Millner*, 888 A.2d at 685. Based on the totality of the circumstances, there was probable cause for the search warrant. *See Jones*, 988 A.2d at 655; *Dixon*, 997 A.2d at 380. Thus, we agree with Counsel that this claim is frivolous.

Lastly, the **Anders** brief raises the issue of whether the evidence was insufficient to sustain Appellant's drug and weapons convictions where the Commonwealth failed to establish that Appellant actually or constructively possessed the weapons and drugs found in the van given that Appellant did not own the van. **Anders** brief at 28. The brief alleges there was

insufficient evidence to prove beyond a reasonable doubt that he possessed any of the contraband seized from the residence. *Id.* at 29.

> The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Ratsamy*, 934 A.2d 1233, 1236 n.2 (Pa. 2007) (citation omitted).

> "[P]hysical possession or control" means the knowing exercise of power over a weapon, which may be proven through evidence of a direct, physical association between the defendant and the weapon or evidence of constructive control. Constructive control, in this setting, an analogue to constructive possession, entails the ability to exercise a conscious dominion and the intent to do so.

*Commonwealth v. Newman*, 99 A.3d 86, 100 (Pa. Super. 2014) (*en banc*) (quoting *Commonwealth v. Hanson*, 82 A.3d 1023, 1036-37 (Pa. 2013)).

In **Commonwealth v. Johnson**, 26 A.3d 1078 (Pa. 2011), our Pennsylvania Supreme Court stated

> the tripartite legal requirements for a finding, beyond a reasonable doubt, that a defendant constructively possessed an illegal substance, i.e., 1) the defendant's ability to exercise a conscious dominion over the illegal substance; 2) the defendant's power to control the illegal substance; and 3) the defendant's intent to exercise that control[.]

**Id.** at 1086. Constructive possession may be established by the totality of the circumstances. **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa. Super. 2013).

At trial, Officer Kapusniak testified that he observed Appellant exit 940 East Russell Street and meet Mr. Borges. Appellant went to the white custom van and opened the van door with a key. The officer observed Appellant hand Mr. Borges clear baggies. Weapons were also found in the van. Officer Holts testified that he recovered photographs of Appellant and a letter addressed to Appellant at 940 East Russell Street. The circumstantial evidence, viewed in the light most favorable to the Commonwealth as verdict winner, was sufficient to prove that Appellant had constructive possession of the contraband found in the van. **See Johnson**, 26 A.3d at 1086; **Newman**, 99 A.3d at 100; **Hopkins**, 67 A.3d at 820. Accordingly, we find the evidence was sufficient to sustain Appellant's drug and weapons

convictions and agree with Counsel that this claim is frivolous. *See Ratsamy*, 934 A.2d at 1236 n.2.

Our independent review of the record reveals no other issues of arguable merit. *See Orellana*, 86 A.3d at 882 n.7. Accordingly, we grant counsel's petition for leave to withdraw and affirm the judgment of sentence.

Counsel's petition for leave to withdraw granted. Judgment of sentence affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017